FORM TO BE USED BY PRISONERS IN FILING AN ACTION UNDER
28 USC § 1331 OR 1346

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

F I L E D
U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JAN 2 8 2019

BY
DEPUTY

1:19cv42

_Marcus Choice Williams USMNo. 93636-279_

_aka ayana satyagrahi_

(Enter above the full name and Inmate Number of each plaintiff in this action.

vs.

_M.K. Lewis, Cuthwright, Hansen, Taylor, A. Collins, Dr. McGarvey, S. Ledet,_

_Dortch, Commander Edwards, S. Sowell, R.F. Karaway_

-- 1st Ten Defendants work address:                              *- Last Defendant work address
_5560 Knuth Rd, Beaumont, Tx 77105_          344 Marine Force Drive, Grand Prairie, Tx 75051.

(Enter above the full name of each defendant in this action. DO NOT USE "ET AL.").

I.   PREVIOUS LAWSUITS

A.   Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

_____ YES         ✓  NO

B.   If your answer to "A" is "yes", describe each lawsuit in this space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

1.   Approximate date of filing lawsuit: _____

2.   Parties to previous lawsuit:

     Plaintiff(s) _____

     Defendant(s) _____

3.   Court:  (If federal, name the district; if state, name the county). 

     _____

4.   Docket Number: _____

5.   Name of judge to whom case was assigned: _____

6.   Disposition:  (Was the case dismissed?  appealed?  still pending?)

     _____

     _____

7.   Approximate date of disposition: _____

1

II.   PLACE OF PRESENT CONFINEMENT: _FCI Beaumont Low - SHU; Beaumont, Texas 77720_

A.   Is there a prisoner grievance procedure in this institution?

___✓___ YES   _____ NO

B.   Did you present the facts relating to this complaint in the state prisoner grievance procedure?

___✓___ YES   _____ NO

C.   If your answer to "B" above is "Yes":

1.   What steps did you take? _I file the grievances   (see attached complaint)_

2.   What was the result? _still waiting on remedy   (see attached complaint)_

D.   If your answer to "B" above is "no," explain why not:

_____

_____

III.   PARTIES TO THIS SUIT:

A:   Name, Inmate Number, and Address of each plaintiff:

_ayana satyagrahi aka Marcus Choice Williams USMW: 43636-279_

_FCI Beaumont Low; PO Box 26020; Beaumont, TX 77720_

B:   Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: ① _M.K. Lewis, Warden, FCI Beaumont Low, 5560 Knauth RD, Beaumont, TX 77705;_
② _Cuttwright, PREA Compliance Manager, FCI Beaumont Low, 5560 Knauth R.D, Beaumont, TX 77705;_ ③ _Hansen,_

Defendant #2: _SIS LT, FCI Beaumont Low, 5560 Knauth RD, Beaumont, TX 77705;_ ④ _Taylor, Unit Manager,_
_FCI Beaumont, Low TX 77705, 5560 Knauth RD, Beaumont, TX 77705;_ ⑤ _A. Collins, Counselor at FCI Beaumont_

Defendant #3: _Low, 5560 Knauth RD, Beaumont, TX 77705;_ ⑥ _Dr. McGarvey, Psychologist at FCI Beaumont_
_Low, ⑦ 5560 Knauth RD, Beaumont, TX 77720; S. Ledet, Trust Fund Supervisor at FCC Beaumont, 5560_

Defendant #4: _Knauth RD, Beaumont, TX 77705;_ ⑧ _Dortch, Op LT at FCI Beaumont Low, 5560 Knauth RD,_
_Beaumont, TX 77705; CMDR Edwards, HSS at FCI Beaumont Low, 5560 Knauth RD,;_ ⑩ _S. Sowell, CO at FCI BML,_
_5560 Knauth RD, Beaumont, TX 77705; RF. Karaway, Region Director at FBOP, 344 Marine Force Dr, Grand Prairie, TX 75051_

※ _All defendants except #15 have same work adress._

IV.   STATEMENT OF CLAIM  ⑪

State here as briefly as possible the facts of your case.   Describe how <u>each</u> defendant is involved.   Include also the names of other persons involved, dates, and places.   Do <u>not give any legal arguments</u> or cite any cases or statutes.   If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.   (Use as much space as you need.   Attach extra pages if necessary).

_They are lengthy, see attached complaint!: FBOP staff are denying plaintiff with safe housing accom-_

_odations for her transgender/Gender Dysphoria disability - cell closest to officer station; posted time when TG inmate can shower_

_3 times per day for 20 mins in shower area alone; have officer stand guard in shower area while TG inmate showers;_

_cell with TG inmates only, and when TG inmates aren't available - cells alone alone; give TG inmate Pass/card stating they/I_

_am to be Pat/Visual searched by Female staff only; Give inmate job back in Barber shop; Force staff to use female_

_pronouns when talking to TG inmate (me), when talking to someone else about me, and when writing about me in documents and computer; have_

_staff to grant medically necessary Different Female Clothing and commissary; Force staff to stop retaliating on me - Harrassing me!_

③ Tell staff not to retaliate on me; Have me housed in a new unit like the Unicor Unit = XA; and I wish to be financially compensated where possible for my pain, suffering, and emotional distress, (See attached complaint for more details) Oh, have staff not to censor/open my legal mail without me being present.

④ with an Card Stating so; tell staff to use female pronouns/sir names while talking to me, with others, or while entering info in to documents, computers, etc; have staff provide all female styled Clothing, & Commissary items asked for in grievances; have staff give me my barber job back; have staff to shelve disciplinary sanctions til after tried in court, that includes raising custody points and transfering me = keep maginot variable on me;

V.  RELIEF: State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

① Grant Preliminary injunction freeing me from Solitary Confinement, back to general population on FCI Bill yards; Have staff to give me cell nearest to CO station with TG cellmate or no cellmate; post times when TG inmates shower alone in shower area; post guard outside my shower door for 20 mins as I shower; tell staff to have female staff Pat/Visual Search ONLY;

*(left margin, vertical): TG=transgender*

Signed this ___15 th___ day of ___January___, 20 _19_.
       (date)            (month)          (year)

*ayana satyagrahi/a.c.*

_____

_____

(Signature of <u>each</u> plaintiff)

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Executed on: ___January 15, 2019___
                    date

*ayana satyagrahi/a.c.*

_____

_____

(Signature of <u>each</u> plaintiff)

ayana Satyagrahi  aka
Marcus Choice Williams
USMN: 43636-279
FCI Beaumont LOW
PO Box 26020
Beaumont, TX 77720

# UNITED STATES DISTRICT COURT
## Eastern District of Texas

ayana satyagrahi  aka
Ms. Marcus Choice Williams,
Plaintiff,

V.

M.K. Lewis, Warden of FCI Beaumont LOW;
Cuttwright, PREA Compliance Manager of
FCI Beaumont LOW;
Hansen, SIS Leutinant of FCI Beaumont LOW;
Taylor, Unit Manager at FCI Beaumont LOW;
A. Collins, Correctional Counselor at FCI
Beaumont LOW;
Dr. McGarvey, Corrections Psychologist at FCI
Beaumont Low;
S. Ledet, Trust Fund Supervisor at FCC
Beaumont;
Dortch, Operations Leutinant of FCI Beaumont
Low;
R.F. Caraway, South Central Regional Director of the
Federal Bureau of Prisons;
Commander Edwards, Health Services Supervisor at
FCI Beaumont Low;
S. Sowell, Corrections Officer at FCI Beaumont Low,
individually and in thier official capacities,
Defendant(s).

# COMPLAINT

## Civil Action No: _____

## I. JURISDICTION & VENUE

1.    Plaintiff brings this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (Bivens). The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2.    The Eastern District of Texas is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3.    Plaintiff ayana satyagrahi aka Marcus Choice Williams, a transgender woman, is and always was mentioned herein a prisoner at Federal Correctional Complex Beaumont, in the custody of the Federal Bureau of Prisons – FBOP. Plaintiff is currently confined in Federal Corrections Institute – FCI Beaumont Low, in Beaumont, Texas.

4.    Plaintiff is diagnosed with Gender Dysphoria – GD. She humbly asks this court to please use her female name – ayana satyagrahi (lower-case letters signifies Buddhist humbling vow), and to also use female pronouns/surnames (ie, she, her, ma'am, woman, Miss, etc.) in any of this court's future filings/comments. See Norsworthy v. Beard and Quine v. Beard (9thCir.); Doe v. Mass. Dept of Corr., U.S.D.C. (D. Mass); Mitchell v. Kallas (7th Cir.); and Passion Star (Texas, 2018).

## III. DEFENDANTS

5.    Defendant, M.K. Lewis is the warden of FCI Beaumont Low prison. He is legally responsible for the operations of FCI Beaumont Low, and for the welfare of 'all' the inmates in that prison.

6.    Defendant, Cutturight is the PREA Compliance Manager at FCC Beaumont. She is legally responsible for the implimentation of the Federal PREA laws at FCI Beaumont Low prison.

7.    Defendant, R.F. Caraway is the South Central Regional Director of the Federal Bureau of Prisons. He is legally responsible for the safe operations of all of the prisons in his region, and for the welfare of 'all' inmates housed at FCI Beaumont Low prison.

8.    Defendant, Commander Edwards is the Health Services Supervisor at FCI Beaumont Low prison. She is an employee of the Federal Bureau of Prisons, and is responsible for providing medical care to all of the inmates at FCI Beaumont Low prison.

9. Defendant, Hansen is a Corrections Officer of the FBOP who, at all times mentioned in this complaint, held the rank of SIS Leutinant and was assigned to FCI Beaumont Low.

10. Defendant, Taylor is a Corrections Officer of the FBOP who, at all times mentioned in this complaint, held the title of Unit Manager and was assigned to FCI Beaumont Low's Building 3.

11. Defendant, A. Collins is a Corrections Officer of the FBOP who, at all times mentioned in this complaint, held the title of Corrections Counselor and was assigned to FCI Beaumont Low's Building 3, Units WA and WB.

12. Defendant, Dr. McGarvey is an employee of the FBOP who, at all times mentioned in this complaint, held the title of Corrections Psychologist and was assigned to FCI Beaumont Low's Psychology Department.

13. Defendant, S. Ledet is an administrator of the FBOP who, at all times mentioned in this complaint, held the title of Trust Fund Supervisor and was assigned to USP Beaumont, FCI Beaumont Medium, FCI Beaumont Low, and Federal Work Camp Beaumont.

14. Defendant, Dortch is a Corrections Officer for the FBOP who, at all times mentioned in this complaint, held the title of Operations LT-Leutinant and was assigned to FCI Beaumont Low.

15. Defendant, S. Sowell is a Corrections Officer for the FBOP who, at all times mentioned in this complaint, held a job at FCI Beaumont Low prison.

## IV. FACTS.

### HISTORY

16. I am a transgender (TG) inmate who's serving a 30 year sentence in the FBOP. I've been at FCC Beaumont for the past 6 years, with 5.5 years at FCI Beaumont Medium and the last 6 months at FCI Beaumont Low. Since being at this complex, I and many other TG inmates have been mistreated and neglected by inmates and staff — due to our TG statuses. Staff here will tell you that they follow the law, but the truth is that they feel that they are above the law and FBOP policy. They, staff, have created an anti-Transgender climate here.

17. My case, psych, and medical files show that I have been struggling with Gender Dysphoria (GD) since a child (See Exhibit B, of Exhibit B-Remedy 2). Since being in FBOP custody - 2010, I've experienced many episodes of anxiety, depression, auto-castrative ideation/attempts and suicidal ideation/attempts — which is due to GD of which I am suffering **NOW!**

18. In 2016, while at FCI Beaumont Medium, I'd completed all FBOP staff suggested mental health therapy. In 2017, my psych profile dropped from Care Level 2 to Care Level 1. In mid 2017, I asked FCI Beaumont Medium's staff psychologist, Dr. Snyder, if it was possible for me to receive the next level of treatment for my GD and/or transgenderism, which is called transitioning (See Exhibit A, of Exhibit B-REMEDY 2). Transitioning includes changes in clothing, name, pronouns, hairstyling, hormone therapy, surgeries, and socially living in one's identified gender role — female! I explained to Dr. Snyder that I wanted to live as a woman daily, unimpeded; that I felt the need to receive female uniforms and clothing from Laundry Department, and to receive female commissary items that would support my need daily female hygienic rituals: make-up, hair accessories, clothing, shampoos, shoes, perfume, earings, boots, etc. Dr. Snyder said that in order for me to receive this form of treatment, which is called The REAL Life Experience (RLE) according to the authorities on TG Standards of Care (SOC) - WPATH. org, I'd probably have to be transfered to a female federal prison. Months later, Dr. Snyder and FCI Beaumont Medium's, then, Associate Warden Boncher, and also a psychologist, began assessing me for suitability for a female prison transfer.

19. January 2018, A.W. Boncher informed me that Central Office wants me to step-down to a low security male prison, via Management Variable, before being considered for female prison. (SEE Exhibits C & D, of Exhibit B-REMEDY 2).

### TRANSGENDER ACCESSIBLE PRISONS

20. My complaint is complex, yet simple; Federal Bureau of Prisons' staff have failed to make reasonable accomodations for my serious Gender Dysphoria (GD) disability (See Exhibit A-REMEDY 1; this grievance was given to Unit 3A's Case Manager, Mrs. McCowin as she walked through the 400 Range of FCI Beaumont Low's SHU—Special Housing Unit **AKA** The Hole—where I am now FORCED to reside).

## HOUSING

21. I arrived at FCI Beaumont Low (BML) on the last Friday of May 2018 with my Pat/Visual Search by Female Staff Only Pass in hand, and with great expectations in transitioning into my womanhood via being allowed to receive The Real Life Experience as mandated by the Standards of Care (SOC) for TG people by WPATH.org (See Exhibit A, of Exhibit B-REMEDY 2). I was called into an office; there, RDAP Case Manager Jones held my entire case file. He informed me that I was moving to a unit that was directly above his office—XB!

22. After dislodging my bags at the cubicle I was to live in, I immediately went down to unit MB's Unit Team Area to protest to Jones as to my living arrangements. I told him that a Risk Assessment had been performed on me when I was at FCI Beaumont Medium (BMM), and that I was at a medium to high risk to be victimized. I said further, that I protest being housed with a 6 foot 4 inch giant of a man, in a cell that's at the back of the unit that would eventually house 3 people, and all of the cell/cubicle (cubes) were without distress buttons. He asked, "Well what do you want me to do?" I said, "please put me in a two person cube nearest to the officer's station. Allow me to bunk with TG inmates only; when one wasn't available, allow me to cell alone." He replied, "Look, I don't have that power. Your going to have to talk with your unit manager—Rivera, and I think he's gone for the day." That night I didn't even shower (PTSD), because the communal shower/bathroom area was too busy. I also found out that there wasn't a sitting officer on the XB side, on the overnight shift; so, that meant if I'd have had to scream for help there'd be no help coming! I didn't get any sleep that night!

23. Because I'd been sexually abused while at FCI Beaumont Medium, I have grown to be hyper-conscious about my surroundings. That's why, on the following Sunday, only 2 days into being at FCI Beaumont Low, I packed my bags and went to either Counselor Davis, Case Manager Jones, or Unit Manager Rodriguez; I can't remember which FBOP staff it was. But I said that the Risk Assessment allowed me to be housed nearest the Officer's Station, and that because there isn't an Officer on XB's Unit during sleeping hours that it wasn't safe for me to be in that unit—Period! I noted to staff that PREA laws and FBOP policy 15200.04 allows for them to accomodate my need. I was allow-

ed to move into an empty, 3 person cube, in Unit XA thats two cubes away from the officer's station. And there was an officer present in the unit 24 hours per day.* TG inmates should never be housed in a unit without an officer on duty all day and night.* I unpacked my bags, and nervously showered behind the larger-than-the-Medium's shower doors.© Heaven!

24. On the next day, which was a Monday, I found this gay inmate who needed a cell/bunk mate because the white guys on this prison yard didn't want him here! He asked me if I could allow him to bunk with me. He and I both thought it a good idea since we're both members of a vulnerable, protected class. I agreed immediately! I thought to myself, 'Staff allow gang members, members of the same racial groups, people from the same city, and people of the same religions bunk together – this should be easy.' I went into Counselor Davis' office and explained my situation, and asking finally if he could allow me to have this LGBT guy to be my bunk mate. He said that he thinks I'm being moved back to my original unit XB, the one without the overnight officer. We bolted out of his office in protest.

25. Shortly thereafter, the gay inmate and I arrived at the Psychology Department. There we tried to get Dr. McGarvey to help with the housing, as he was one of the psychs who performed my Risk Assessment at FCI Beaumont Medium. He told me that he was busy, and that I would have to send him an EMAIL. I was besides myself, as I'd let him know that this was a PREA Housing situation! He turned us away to fend for ourselves.

26. Soon, I was in Unit WA's Unit Manager's office protesting being moved back to the officer-less Unit-XB. He said oh, that, no, no! Your not moving back there, your moving down here to Unit WA. "What?" I asked. Yeah we know your situation, but you can't stay in that Unit because you don't work in Unicor. So go pack your stuff, bring it down here, and come see me! That was Mr. Rodriguez I was talking to.

27. An hour later, I stood in Case Manager Jones's office. Sitting in another chair was Rivera. Jones sat behind his desk. And A. Collins, WA Counselor stood against a window. "Okay," Rivera said. "Your're going to be celling with two guys. We know you want to be near the officer's station for your safety, but this is the best we can do for now. "So you mean to tell me all 'n celling' with two people; That means your going to have me in a 3 person cell! Listen, PREA says that TG inmates concerns are to be taken seriously regarding safety! Can I please cell or bunk with another TG person, and have a 2-person cube closest to the officer's station?"

28. Counselor A. Collins chimed in, "He..." I interupted, "Policy P5200.04 states that staff should communicate effectively with TG inmates, and that I can request to be spoken to or about

with pronouns and surnames that match my identified gender—female! So, I am requesting that all staff here would please use: she, her, ma'am, Misses, etc. when writing about me in SENTRY, documents, and in person or to someone else?" Well Williams, Collins said, Work with us. As I was saying, Williams is going in the cube with the two guys, you know the ones!

29. Moments later, I rolled my belongings to the cube and found that it contained a shorter giant than the one I'd originally met in Unit XB. He had to weight 350lbs. And the other cube-mate was on the top bunk reading. A friend, that I'd known at the Medium prison pulled me to the side and let me know that the new cubemates were child predators. I had known quams about about that, I thought. Since we were standing near the communal Restroom/shower area, I went inside. I found it extremely dirty. And above the fourth shower stall to the right, the entire ceiling was missing. I asked my friend, "What's up with the ceiling?" Upon infor-mation and belief, the ceiling had been that way since Hurricane Harvey. Staff had been saying they would fix it, but the inmates liked it that way because they could climb in and out of it to hide there stuff! At the time, I thought nothing of it. I just hoped they weren't up there voyuering on people as they showered!

30. For the 1st three days in Unit WA, I didn't shower. I was afraid that someone would watch me from the ceiling. My TG friend came by my cube and noted that I was letting myself go and was beginning to smell. I explained my fears. She offered to stand outside the shower stall, as guard, as I showered. I was so grateful! Because of my fear, I took a quick 5 minute shower and was looking at the ceiling the whole time! That night, I went to sleep thinking of the hole in the ceiling, thinking of the child predators. As a Buddhist, I knew that all people make mis-takes, and these 2 child predators were people too. They deserved to be treated fairly. But because a very close member of my family had told me, just 4 month prior, that they'ed been sexually abused while I was gone to prison; I sat up in the bed most nights staring at the pair. I thought also, If he climbed on top of me I couldn't possibly get him off!

31. At this point, I started venturing out of the Unit, going to the recreation yard and library; there, I would meet and mingle with the other TG women on the yard, some 10 then, I found out that none of us were allowed to cell with each other! Upon information and belief, this was because staff thought we would be having sex with each other, as cubemates! But, I know from experience that keeping us separate leaves us vulnerable! I also learned that many of these women were housed on the B sides of their buildings; this was the side that didn't have an overnight officer, and no panick buttons. They informed me that the only female clothing items we were getting were bras and panties—no uniforms, etc, (See Exhibits B-Remedy 2, & C-Remedy 3). I was upset, because that meant that none of

the Gender-Affirming Accomodations I'd asked Dr. Snyder for in my Real Life Experience request were being provided here. I'd basically been sent to a regular men's prison with few TG services.

32. About 3 weeks into living with the short giant, I stormed into Unit WA Counselor, A. Collins' office. I was a wreck – unkept, unwashed, undersleeped (is that a word?), just fed up! I said Mrs. Collins, I have found this guy that is willing to allow me to bunk with him, until you arrange, in the future, a bunk closer to the Officer's station. His cubemate wants to move to a cube in the back, and I can take his spot? that means there'll be only two of us in his 3 person bunk, and he's size compatable with I. Also, I need to move because I've been ruminating over the fact that the current cubemates are child predators; see a close family member told me they'd been abused while I've been away. And, what IF the big one climbs on me in the middle of the night? Collins approved the move, and noted, "Your homeboy from Dallas, Phoenix, is moving out of the 2 person cube soon. That's where your going next. Okay, I said, then pressed further. Mrs. Collins, I haven't been showering regularly, maybe once a week. And I've been awkwardly taking bird baths in the handicapped stall's sink. Well, this is because of the giant hole in the bathroom's shower area's ceiling. Can you arrange for me to shower separate from other inmates; that's what PREA laws and FBOP policy P5200.04 states. Can you arrange for an officer to stand guard while I shower, because I believe inmates are in the ceiling, possibly watching me as I shower. There's a big trash can under the HOLE to help inmates get in the ceiling. She retorted, listen, we put a work order in for the ceiling to be fixed! You'll have to wait until then! So what am I to do in the meantime? Can I be allowed to shower in Unit MB's bathroom? Williams, just be glad with the cube move. We'll get the ceiling fixed, your good! I wasn't good, but I left her office grateful for the new cubemate, and hopeful in the hole being plugged.

33. So, during the last week in June, I moved into the 3 person cell in the back of Unit WA, but it only housed a guy from Alabama and I. I settled in. I still wasn't bathing regularly; this led to shame, embarrassment, and the thoughts I'd come to loathe. I began to plot and plan different ways in which I could remove the "curse genitals" that resided at the meeting of my thighs; this, I knew was a symptom of Gender Dysphoria! Since a child, I'd tied It down, taped It down, cut It on a few occasions. I felt, feel, that if it were removed, I'd be made complete, I'd be accepted as female! This condition, in this testosterone-laden environment, is exacerbated to the 10th power, especially as I sit stewing in a SHU cell, alone, during the holidays✡! But it was just thoughts. I had to get out of the unit.

34. Around the 1st of July, I went to meet with Dr. McGarvey. I explained my need for proper housing accomodation for my transgenderism and Gender Dysphoria disability. I reminded him

of all the PREA laws, the FBOP policy P5200.04, and how they affected me. I informed Dr. Mc-Garvey further that staff weren't using female pronouns and surnames when talking to or writing about me in SENTRY; that I was upset that he'd turned me away when I'd 1st arrived at FCI Beaumont Low, and all I'd wanted to tell him then; that I wasn't getting my regular daily hygiene because of the large hole in Unit WA's shower area's ceiling; that I was paranoid that someone was voyuering at me, as I showered, from the large hole; that I was birdbathing, sometimes, in the handicapped toilet stall's sink. I stated that Boucher had said that I was being sent here to be around more TG people and to receive more TG services; that by not allowing me be house with TG inmates, when other groups were allowed to live together in a cube wasn't right. I informed him that I was supposed to be getting more Gender-Affirming Clothing & Commissary items (See Exhibits B & C-REMEDY's 2&3), but there were no more of these RLE item here at FCI Beaumont Low than there were at FCI Beaumont Medium. I then declared, "You are well aware of my past history of auto-castrative and suicidal idea-tiva/attempts! And by me NOT being able to transition via WPATH.org's Standards of Care for TG People (See Exhibit A, of Exhibit B-REMEDY2), my GD is being exacerbated." I asked if he could please help me: get a cube near CO's station; to shower separate from others, to be called female pronouns/surnames; to get staff via his recommendation/memo to give me clothing and commissary that matched my gender identity; to help me get electrolysis facial hair removal treatments, all again where allow via PREA and FBOP policy P5200.04. Dr. McGarvey asked if I felt like harming myself. I replied "NO, not at the moment!" He then stated that he was just a psychologist, and all he would/could do is recommend. He said he can't make staff do anything! I walked away perplexed and asking myself like the old throw back song crunes: Who Can I RUN to? (SEE Exhibit F, of Exhibit B-REMEDY2 for proof of our communications)

## GENDER-AFFIRMING CLOTHING/COMMISSARY

35. Around July 1st, 2018 I had stopped Mr. S. Ledet who's the head of FCC Beaumont Complex's Trust Fund Department, which FCI Beaumont Low's Laundry and Commissary Departments fall under his care. I cited that other FBOP institutions were allowing TG inmates to be given through it's Laundry Depts. female-styled clothing/uniforms, and they were allowing TG inmates to purchase from a more extended commissary list female-styled gender-affirming commissary items from their respective Commissary Depts. I showed him the FBOP's Standardized Commissary list from the Sally Port page and noted that we here at FCI Beaumont Low was receiving ONLY six of the required 25 items. He said that he would get on it and try to research the issue and get back with me.

36.  Friday, July 20, 2018 I spoke with Trust Fund Supervisor, S. Ledet; as we stood in front of the FCI Beaumont Low's cafeteria, he told me that he was working on getting me the gender-affirming clothing and commissary items I'd inquired about. (See Exhibit F, of Exhibit B-REMEDY2).

37.  On July 19, 2018, I submitted the initial grievance to Counselor A. Collins asking Trust-Fund Supervisor, S. Ledet to "please provide me—a SENTRY, CMA documented, TG female inmate—with adequate medical care via access to female-styled, gender-affirming clothing: Laundry uniforms (khakis blouse and pants, t-shirts, socks, work boots, and winter coats) and Commissary items (sweatshirts and pants; t-shirts both long and short sleeves; jersey and cotton shorts; socks; and purchasable work boots), again, female-styled." (SEE Exhibit B-Remedy2). In this grievance he is made aware of my GD disability, and the suffering I have endured as a result of not receiving this requested treatment. He refused.

38.  On August 1, 2018, I submitted the 2nd grievance to Counselor. Collins, effectively informing her of my GD condition's seriousness, and asking Trust Fund Supervisor, S. Ledet to "please provide me—a SENTRY, CMA documented, TG inmate—with adequate medical care via access to a more extensive gender-affirming commissary (GAC) list, as the currently very paltry, FCC Beaumont Transgender Commissary List... fails to meet my medical needs. Please add... all items listed on the... BOP March 14, 2018, Standardized Female/Transgender* Commissary Items list..." (See Exhibit C-Remedy3).* To date he has refused to allow the requested items therein. Nor has S. Ledet reported the Warden, M.K. Lewis for not following P5300.04.*

39.  On August 1, 2018, I submitted the gender-affirming clothing grievance to A. Collins for appeal to Warden as S. Ledet, Trust Fund Supervisor had failed to respond (See Exhibit B-Remedy2). This grievance officially put Warden Lewis on notice as to the severity of my need, my condition, and the suffering I'd been enduring as a result of not being provide this necessary care. Upon Information and belief, several officers and inmates said that Warden Lewis said that the TG inmates wouldn't get nothin' on his watch!

40.  On or about August 28, 2018, I submitted the gender-affirming commissary grievance to Counselor A. Collins for appeal to Warden Lewis as S. Ledet, Trust Fund Supervisor had failed to remedy my need (See Exhibit C-Remedy3). This appeal to Warden Lewis officially put him on notice as to the severity of my need, my condition, and my suffering due to lack of care. (See Exhibits F, of Exhibit B-Remedy2 for more correspondences with Warden Lewis).

## VISUAL/PAT SEARCH

41. Days before July 11, 2018, the Leutinants called all of the TG women of FCI Beaumont Low to the LT's office; there, they—LT. Fontenot, Lt Dortch, CO Hodges, and two other officers—sat as Fontenot led the meeting. Fontenot said that we were there so he could find out what our needs were, and to make a statements. We told him that policy allowed us to have female clothing from laundry, and female commissary (more) from Commissary; but staff weren't allowing us to receive it! Then inmate Linares (Chiqis), usmw 2965u057, chimed in stating that she'd recently went to visit, and had been forced to be visually searched by a male CO after visit—eventhough she had requested a visual card via email more than a year earlier. The other women noted that none of us had a visual search card! I added, except me! I stood in the LT's office holding in my hand, what seemed to be a 5lbs bar of solid gold! I explained that "they/we have the miniscle TG commissary list because I fought for it while at the Medium prison, and that I had fought for this," still holding the dualsided yellow card in the air. I let Fontenot see it and finished, "A.W. Boucher, the then PREA Compliance Manager had given it to me!" I then handed out, to all the 10 girls: 750 (Maria) 7611/8051, Maravilla-Valdez 49648-308, Bivens 16634-035, Pavone (STAR) 12186-031, Gonzales (Lily) 13355-078, Carrillo 18450-035, and several that have since left FCI Beaumont LOW (See Exhibit F).

42. LT. Fontenot went on to say that they were all there to help. They would pass the information along to Trust Fund, the PREA Compliance Manager, and the Warden. Then he said clearly, "I and other officers will call you female pronouns and surenames, but you must understand that we are in the bible belt and some of us, well the other staff are going very slow with this TG change/acceptance. I'd ask y'all to walk with us. And to the statement, recently it has come to our attention, though we believe it not to be true, that one of you were seen walking around in the unit with just wearing your sportsbra. The room erupted in protest that none of us would do that, but if we did the men are allowed to walk in their cubes with their shirts off—that's not fair. Though we wouldnever do that! Fontenot calmed everyone down and said he believed that to be a lie or ploy from an inmate who is trying toget muscle-shirts on the male commissary list. We all left the meeting, and I felt that the meeting was just a ploy to find out who we allare and to put a target on the alledged ring/leaders back, as Fontenot had told both Bivens and Linares.

43. On July 11, 2018 (SEE Exhibit F), I was called to the LT's office; and there Lt. Dortch

confiscated my TG Visual/Pat search card. Dortch stated that he'd received a call ordering him to take it, and to have me to apply for another one. I explained how hard it was for me to get that one from A.W Boncher at FCI Beaumont Medium. I said that I should never have to reapply for that card, because that would leave me vulnerable – once approved, always approved! I said that the card was necessary to keep officers from sexually harassing or assaulting me during searches, and that not having it puts me and staff at risk! Dortch didn't know at the time but, I just reported on the DOJ Sexual Abuse Hotline that I'd been sexually abused by more than 6 inmates and 1 officer. I reported this on December 14, 2018. The abuse happened while I was at FCI Beaumont Medium ). I chided, "There's no valid reason for me 'not' keeping the current card, except that none of the 10 girls here has a Visual Search Card, and female staff are resisting to follow BOP policy, as to performing TG inmate search duties. (See Exhibit F)

44. July 11, 2018, I emailed to Dr. McGarvey an encounter I had with, then, A.W Frazier who no longer works at FCI Beaumont. In the email I'd asked Frazier if I could be Visual Searched via REO x-ray machine until I received a new card. He said No! After receiving this, Dr. McGarvey, a mandated reporter, failed to notify any emergency reporting agency: DOJ, PREA Auditor, or Washington's BOP offices of this aggregeous violation of federal PREA Laws and FBOP policy P5200.04. It seemed as if I were beginning to come apart. (See Exhibit F)

45. After 2 months of anguishing over being possibly searched by male officers, LT. Dortch called me to his office; there he present to me a yellow pat search card – minus the visual search card on the back. But on the front it had the name of the new PREA Compliance Manager, A.W. Cuttwright. I had met her before at the medium. She wasn't approachable. I admonished Dortch for not giving me a Visual Search Card and for taking the card in the 1st place. I let him know that I would Never submit to a Visual/Pat search by a male officer. I left in a furious state. The law should state that once approved always approved! (See Exhibit F)

46. On November 2, 2018, I sent the standing PREA Comp. Manger – Cuttwright an email. (See Exhibit F). The email has the foregoing search complaints attached. She knows/knew I was fearful and wouldn't allow my family to visit. This was never remedyed by her – ever!

47. Upon information and belief, several trans-friendly inmates had attended the November 2018 A&O for new arriving inmates. At the orientation they said that LT Dortch joked, "Yeah, and guess who gets to search the TG inmates?" He was standing in a room of over 60 new people. They waited for the punch line, "Me! Eeww!." The informers said the

room erupted in laughter at our exspense (I know that's not spelled right) - The TG girls of
FCI Beaumont Low, "The Pink Cadillac"!!! This is the breeding of anti-transgenderism, by
those who are tasked with taking care of our needs. Sad indeed!

## HOUSING

48. Near the end of July 2018, as I was turning in one of my grievances, I informed A.
Collins that there was a two person cube that I can move into once inmate Phoenix
went into the Residential Drug Treatment Program. She told me to remind her when he
is relocated.

49. The 1st week of August 2018 A. Collins allowed me to move into cube 6 of WA Unit.
It was a two person cube but not near the CO's station. My cubemate was a guy from
Dallas - Timothy Fields. I was eleighted to be in a less crowded space, but I soon learned
that everything that glitters ain't gold! Soon, Fields begin trying to dictate how I was going
to live in "his" cube: Don't use the desk - go to the library; I don't want NO company
in here - go to the rec. yard; Don't leave your panties and bras where I can see them;
clean the room like this! And I found out that he was a militant Muslim who was try-
ing to turn me back into a man! I couldn't tell staff because I'd be labeled a snitch
and staff would deam me as a problem-child and place me in the SHU - The Hole - where
I now reside. So, I endured!

50. Around mid September 2018, I felt as though I'd endured enough! So, I went to A. Collins
again. In her office she told me that she was still waiting for the work order to be filled. I
told her all of the problems with being housed with Fields. She then called the new Unit
Manager, Taylor, into her office. As he held the wall, and Collins sat I told him of all my ills
as to PREA & FBOP policy P5200.04 not being followed as to my needs for being TG and having a GID
disability. I made him know that I was bathing in a sink due to a non-fixed hole in the
ceiling. I told him of my problems with Fields. I asked if I could move to a Unit that was
hole-Free, maybe XA? He said No, Your not in Unicor! I said so if I get a job in Unicor, I
could move up there? We'll cross that bridge when we get to it. They begin to talk to each-
other about me while using male pronouns/surnames. I stopped them and requested
them to use female pronouns/surnames as this was allowed via policy. Taylor asked,
"Williams, your gonna have to work with us? It's a process." I told him I'd been working
and waiting on the BOP for almost 8 years! He then resolved, look I just got here! There is a
work order in for the shower hole! You can't use another Unit's shower! And your stuck with
Fields until a two person cell that's closer to the CO's station comes available.

## JOB LOSS via GENDER DISCRIMINATION

51.  On June 12, 2018, I sent an email to LT Fiorillo (See Exhibit D-Remedy 4-#1); there, I asked to be considered for a job in the FCI Beaumont Low's Barbershop.

52.  I contacted pertinent staff: LT Dortch, LT Fontenot, etc. over the next few months (Exhibits A1-A5, of Exhibit D-REMEDY4) to inform them that I was nefariously being blocked from working in FCI Beaumont Low's barbershop - due to my TG status. Then, Captain Buckner responded - we know... Upon information and belief some inmates and staff had told me that the Warden didn't want me working in the barbershop?

53.  On Wed., 11/09/18, LT Dortch hired me in the babershop (SEE Exhibit A3 of Exhibit D-Remedy 4).

54.  Tuesday, 10/23/18 at 11:45am, while standing in front of locked barbershop, I asked Warden Lewis how is it possible that TG inmates at FCI Bastrop, Seagoville, Ft. Worth, Oakdale, FMC Carswell, etc. are allowed issued and sold my requested female-styled clothing/commissary items, but we here at FCC BMLow aren't? He responded, "This isn't those facilities! Your at Beaumont! What would I look like allowing men who are vulnerable and weak, to masquerade around this yard as women - enticing other inmates? It won't happen on my watch.

55.  Only 2 hours after speaking with under educated Warden Lewis, I was called to the Leutinants office and fired by LT Dortch. He informed me that I was being removed from my post for my safety and for the orderly running of the institution. And I am able to put you immediately in another job where staff can see you at all times. I told Dortch that the only difference between me and the barbers that still worked in the barber shop is my TG and Sex offence status - this is discrimination. He called Univor and had me placed in the factory. He wouldn't tell me who order him to fire me, but in the attached remedy 4 I suspect it was the Warden.

## GENDER-AFFIRMING CLOTHING/COMMISSARY

56.  August 22, 2018 Warden M.K. Lewis failed to remedy my grievance for female-styled gender-affirming clothing (See Exhibit B-Remedy 2). He is aware of my G.D disability.

57.  September 10, 2018 I mailed grievance for female-styled gender-affirming clothing to

South Central Region for Regional Director R.F. Caraway to remedy. He was then aware thoroughly of my GD disability.

58. On October 16, 2018, Director Caraway failed to remedy my need for gender-affirming clothing - effectively denying me adequate medical care for my GD disability.

59. On November 19, 2018 appealed my gender-affirming clothing remedy (SEE Exhibit B - Remedy 2) to the FBOP's Central Office in Washington, DC. They are now aware of my serious GD disability and needs.

60. On Sept 11, 2018 Warden M.K. Lewis failed to remedy my need for a more extensive gender-affirming commissary list (SEE Exhibit C - Remedy 3). He is aware of my GD disability.

61. On November 8, 2018, I mailed grievance for female-styled gender-affirming clothing commissary to South Central Region for Regional Director R.F. Caraway to remedy. It was due back to me on 12/9/18. I have yet to receive from unit team. Caraway is now aware of my need for adequate care for my GD disability. (See Exhibit C - Remedy 3).

## HOUSING

62. On October 29, 2018, I made my 1st official request, via email, to Unit NA Counselor A. Collins, to be moved to a 2 person cube near officer's station and to be moved to another unit where I could shower safely (see Exhibit E).

63. On October 30, 2018, gave A. Collins an official BP-8 Staff Request Form (See Exhibit G - front & back); There, I asked her to please move me to the Unicor Unit expediently as I was now a Unicor employee and doing so would remedy my non-showering situation and my incompatible cubemate situation.

64. At 2:47pm, after getting off of work at Unicor, I went to A. Collins to retrieve the staff request form. In her office, when I asked what the remedy was she reiterated the same as usual, "A work order has been placed for the hole in the ceiling." She was indifferent to my need for safe housing and showering facilities (See Exhibit G - back).

65. At 3pm, Tuesday, 10/30/18 I went into Unit WA's Unit Team area. I entered

Unit Manager Taylor's office, and explained my need for safe housing and a new cube-mate in Unit XA—as he had said that if I became employed in the Unicor factory that he would move me to the safer unit. I explained that this move would remedy my non-showering due to the hole in the ceiling. Taylor asked, "How do you know they're up there watching you? That's hypothetical! They could be up there hiding hooch (prison wine)! My answer is NO! because no one has been caught peering from the ceiling—YET! You are going to have to continue to use WA's showers until the workorder is filled! I noted that this was preventitive PREA, and that there was a very large trash can under the hole. Taylor refused! If I were to supeona a copy of the video footage of the day and time in question in the hall-way area near Unit WA's shower area, it would show that Taylor NEVER went to the shower area to simply remove the large trash can from underneath the gaping hole—to detur inmates from climbing (See Exhibit G-back). He was/is indifferent.

66.  On November 20, 2018 Unit WA's Unit officer Devereaux caught an inmate climbing from the large hole in Unit WA's shower area's ceiling. All inmates were put out of the unit for a search.

67.  On November 21, 2018 I sent Taylor an email re-informing him of my need for safe hous-ing/showering facilities, noting the recent incident of an inmate being caught coming from the hole in the shower area's ceiling (See exhibit E). Taylor failed to remedy my need, as the descending inmate who was caught had re-affirmed my fears. I was not able to per-form my need for basic human daily hygenic washing. I began to breakdown mentally-completely!

68.  On Sunday, December 2, 2018 at about 2:45pm, I couldn't wait on my Unit Team anymore. They had refused to impliment FBOP policy P5300.04 and federal PREA laws as to my housing needs. So, I went to the Lt's office; there, I reported to LT Fontenot and LT Dortch that inmates were climbing into the shower area's ceiling, and that they were possibly watching me as I showered. (See Exhibit E). They followed PREA laws, and had me moved to Unit XA (Unicor) instead of placing me in lock-up. I was placed in a cube that was close to officer's station and the shower area was without a large hole! I took a well-needed shower and gratefully slept well!

69.  Monday, December 3rd, 2018, I was called from Unit XA down to Unit Manager Taylor's office; this was at 1:15pm. Taylor sat in his office with SIS LT Hausen. They both told me that I was to move back down to the unsafe unit—WA, immediately or I would re-ceive a Refusing Housing disciplinary write-up. (See Exhibit E) This threat was inferred unto me even after I cited PREA laws/FBOP Policy P5300.04. Nothing had been fixed in shower area. I moved back to Unit WA to avoid write-up and SHU housing.

70. On ~~Tuesday~~ Monday, December 3, 2018 at 1:47pm I sent an email to PREA Compliance Manager—AW Cutwright (SEE Exhibit E). In the email Cutwright was made aware of my housing situation. I let her know that I didn't feel safe living and showering in Unit WA. She, being the PREA Comp Manager, is well aware that the next move is to find a way to remedy a TG inmate's need before considering that TG inmate to be housed in AH or lock-up. I didn't say that I was scared to be on the prison yard; I said I wasn't feeling safe in Unit WA. There are/were nine other Units she could have moved me to.

71. At 1:51p ~~Tuesday~~ Monday December 3, 2018 I cc'd the email sent to AW Cutwright to Warden M.K. Lewis. This was a plea for help from the warden. He, in this email was made aware of my need. He, being the warden, is/was privy to Federal PREA laws and FBOP policy P5200.04 as to the housing of TG inmates. Warden Lewis is aware that there were 9 other units to house me in as a remedy (See Exhibit E).

72. Tuesday morning, December 4, 2018 at 6:19a I sent email to AW Cutwright stating that I didn't feel safe living in Unit WA. This was because after being forced back into the unit, I went and saw that the hole wasn't fixed, I didn't bath that night nor did I sleep.

73. On Tuesday, December 4, 2018 at Noon CO Deveraux told me that I was wanted at the LT's office. As I arrived at LT's office, SIS LT Hansen was hastiley leaving. I asked what was it that they wanted? Hansen responded, while walking away and trying to avoid eye contact, "They want you in there!" pointing at LT's office.

74. Inside Leutinant's office, LT Fonterot said, "They're locking you up 'cause of that email you sent — SORRY young lady!'" CO Alfred came to LT's office and locked me in SHU!" He read the order to put me in lock-up and it said, "For Investigation..."

## GENDER-AFFIRMING MEDICAL CARE

75. On Tuesday, October 23, 2018 at 11:35 a.m., in front of FCI Beaumont Low's cafeteria I spoke with the Health Services Administrator — Commander Edwards. We discussed my need for medical care for my serious Gender Dysphoria disability (i.e, RLE, female clothing and hygenic/make-up items; electrolysis facial hair removal...). She failed to remedy my need for adequate medical care for my serious GD disability. She is aware of FBOP policy 5200.04 and my propensity to ideate/attempt my own genitalia's auto-castration/suicide—along with anxiety and depression.

## SPECIAL HOUSING UNIT (SHU) a.k.a. The HOLE

76. On December 4, 2018 SIS LT Hansen had me illegally imprisoned in The Hole. I was Visually Searched by female CO Tate, then placed in a cell with a Mexican National male. The cell was without a desk but did have a shower that we were supposed to share. I did not shower or use the toilet because I didn't feel comfortable showering and/or getting naked in front of a man—for fear of being sexually propositioned, harrassed or worst: raped!

77. Next day, December 5, 2018, Wednesday, CO Robertson, a male officer came to the door. I asked if he could pull the inmate out of the cell while I showered. Robertson said "Just tell him to turn his head!" I ripped, "PREA and BOP Policy P5200.04 says that TG inmates are allowed to shower separate from other inmates." Instead of honouring my request to just pull us each out when the other showered, LT Brownfield had COL. Jones a male officer, to house me in a cell on the 400 Range #236 way at the end of hall farthest away from officer's station—ALONE! Now, "alone" would be great out in general population, but in the hole, where my bouts with depression, anxiety, suicidal/auto-custrative ideation is known to become exacerbated, isn't good for me!

78. Thursday, December 6, 2018 CO Slaydon, a female officer, came on the range for clothing exchange. She started at the farthest end of Range 400 at my cell 236—directly beneath camera. She didn't have panties and bras for me, eventhough I'd been in SHU for 3 days. Slaydon said, "Williams, I didn't even know you were back here!" She said she'd inform pertinent staff. I was beginning my mental descent, as I was put in hole illegally and now I can't even be provided the basic of basic human needs. I wondered, #AmINotHumanandTransToo?

79. Over the weekend I asked several SHU staff can I be given a razor to shave hair on my face because of my severe GD disability. They said only on Tues and Friday. I started fixating on the man hair. I thought to myself, "They're trying to turn me into a man", Regression therapy has been outlawed by SOC of TG Care, WPATH.org. I became more depressed.

80. Oh, Friday, December 7, 2018 Dr. McGarvey came in the morning. He said I was in hole because of the email I sent and that SIS LT Hansen was investigating. He also said that when I get out of SHU I could enroll in PTSD counseling. He said that Resolution Therapy, as suggested by Dr. Snyder, wasn't offered at BOP male prisons. I told him about staff not providing me underwear! He did nothing to remedy/report the latter egregious act.

81. Sunday, December 9, 2018 LT Fontenot came to my cell 236's door. He said I was in SHU because I'd

sent the email to Captain, and because Unit Manager Taylor was upset that I'd went over his head on his off day to get moved to unit XA; this was upon information and belief; and that Taylor said inmates who were scheduled to move into Unicor Unit before me were complaining about my skipping them. I let Fontenot know that PREA safety trumps any waiting list, and that staff could have housed me in any other unit that didn't have a giant hole in the shower area's ceiling! Fontenot replied, "They didn't see it that way."

82. About 4pm Monday, December 10, 2018, I asked-from my cell's door- S. Sowell to please tell LT Brownfield that I need to speak with him about clothing. I wanted to make sure that on the next clothing exchange I'll receive female underclothing. Sowell said okay (see camera), but Brownfield never came.

83. At about 7pm, Monday evening S. Sowell came to my cell door-236, Range 400 (see camera) for clothing exchange. He opened the food tray slot and offered boxers. (I am visibly female and all staff know that Laundry gives TG inmates female underclothes.) I let him know that I'd been in SHU for todays without being given female underclothing. Sowell screamed, "What do you want me to do – pull 'em out o' my ass?" The slot was slammed shut in my face, and Sowell started servicing other inmates further down range. I said through door, "I wear bras and panties!" then slid to floor with my back to door and began to cry – alone! Sowell then mocked in a whiney girls' voice, "I wear bras.... I wear panties!" Inmates and FBOP Staff on Range burst into laughter. I said while sobbing, "Your no different than me (my past criminal behavior)!" Sowell quipped, "I am different, I don't think I am a woman! I like my dick. Dortch says you got a big dick!" (LT Dortch is one of only 5 FBOp staff, male staff, who have ever forcefully VisualSearched me; and Dortch did this while I was on suicide watch at FCI Beaumont Medium). Sowell, the other officers, and the orderlies all exited the range. Everyone had their proper clothing –except me! I was devastated! (Exhibit H)

84. Monday night I prepared a Staff Request Form for SHU LT Brownfield; In it I explained COS. Sowell's actions. I asked him to discipline Sowell according to BOP staff Employee Misconduct, and to please provide me with female underwear. I left out the part about Dortch, because I didn't want Dortch to retaliate –as he'd already taken my VisualSearch Card and my job!

85. Tuesday, December 11, 2018, 1pm CO L. Jones announced, "Look alive 'fellas'! They're walking through!" He was talking about an administration staff walk through. I grabbed my grievance, prepared to try and get Warden Lewis or Brownfield to remedy my need, but when Warden M. K. Lewis got to door 236 I was disappointed and Remedyless. He said, "Mr. Williams! There's 'Mr. Williams!" and walked down range. I corrected, "No, Misses Williams!" Administration staff laughed as they all passed my door (please order discovery of camera footage). I

was devestated further.

86. LT Hansen and LT Brownsfield came on range but purposefully avoided coming to door 236 (view camera) at 1pm.

87. Shortly after the Warden, and his cohorts, had left my door and range, Health Services Administrator – Commander Edwards appeared under the camera and at my door. She saw the big sign sticking out of door seam that read: NEED Medical! Can't get out of bed—CYATICA! She took the sign and said she'd see when I was scheduled to see doctor. I told her that I was having to crawl painfully to slot and that the room had no rails for when my back locks up due to immobility. I said that I wasn't given any female under-wear. She asked had I talked with SHU LT Brownsfield. I said I need to talk to him but he hasn't came on range. She said that he and LT Hansen was just up here. I told her that they purposely avoided my door. I asked her if she'd give 3 staff requests to LT Brownfield. She said yes. I slid them through door seam, And said thank you! This was about 1:10p December 11, 2018.

88. At 1:15pm, Tuesday, December 11, 2018, as I was looking for counselor A. Collins so I could give her a staff request form, Unit Manager Taylor appeared. He took the request form and scolded, "You have your self to blame for being in here. You were doin' too much on the yard: askin' for nail polish, female sweats, uniforms, shoes and stuff! Honey you are going to be in here until they finish doin' what they're doin'. Your not going to come over here and play the games you played at Beaumont Medium. Oh no, M.K. Lewis ain't havin' none of that on his yard!" I couldn't get a word in. "Your not going to skip over people, tryin' to do what you won't to do. This is all your fault! Cause of the email you sent." I was shocked that FBOP staff would not see that my situation was a PREA housing situation that should have been handled with care and sensitivity, but instead staff here are/ were ill trained in the new way of implementing PREA. I was being punished for advocating for myself and for speaking up. And because I have been fighting for female items I and people like me are labeled Problem-Child: I am being punish for seeking safe housing in general population—unbelievable! Only at FCC Beaumont.

89. Still Tuesday, December 11, 2018. Around 3pm CO Sowell came to my cell door 236 and said, "I'm comin' in there everynight and strip searchin' them manboobs and boypussy." He came again at dinner time, about 4:10p, to deliver tray. I was afraid to take tray. (Exhibit H)

90. Tuesday evening, 5:30pm, LT George came to cell door 236 - I thought, great, I could finally get a Leutinant to help me get some clean underwear. I told LT George about my situation, then he crushed my spirit. He said he was only there to deliver a disciplinary report (SEE Exhibit H). I protested that I'd done nothing wrong! George slid the report through the door's seam. It stated that I'd cursed CO S. Sowell out, threatened bodily harm, and had called him an anti -caucaisian racial slur! CRUSHED! George asked me to sign it and said my signature wasn't an admission of guilt — only a receipt. I read the read the report again and thought, "I'm bi-racial, black and white! My mom and grandpa were white! And as a Buddhist, and TG woman—whose constantly demeaned through derogatory name calling—I never use words like that, no matter how upset I may get!" (Exhibit I)

91. This officer is lying on me! I wish to appeal this weaponized disciplinary report all the way to court if that's what it will take to remove it from my record, but it will be hard to do from the SHU! Upon information and belief, CO S. Sowell has fraudulently lodged the report against me in concert with others in order to have their "Problem-Child" removed from FCI Beaumont Medium's Low's yard via transfer, by jacking up my custody level's points. Only if, I'd never have been placed in the Hole 'illegally' in the first place, I'd never have had to have an encounter with Sowell—and lied on! (Exhibit I)

92. Still Tuesday evening. At 6:30pm, CO Courier opened the door's slot for razor pick-up and said, "Razors sissy boy!" Because I was so nervous, I stuck my hand out of the slot and accidentally dropped the razors on the floor. Courier got mad and exclaimed, "That gay dude got fucked and killed in the Medium's (FCI Beaumont Medium) SHU earlier this year!" He picked up the razors, slammed the slot closed, and moved down the range. I'd heard about the event he was threatening me with, but it wasn't right for him to weaponize the event against me. I asked myself, "Was that a threat? Are they going to put a large man in here to rape me—kill me?" I just wished then, as I do now, that I was in general population, in a safe cell with a TG inmate, with my own gender-affirming clothing, commissary, and Visual Search by Female Staff ONLY card. I just want to be! I grew more depressed and started preparing this complaint so that I could get the court to intervene and get me out of this HELL HOLE! I'm looming in this dark, cold, lonely cell!

93. Wednesday, December 12, 2018 at 8:30am Lt Brownsfield and CO Tate came to my door 236 and delivered 6 panties and 6 bras. I said thanks. The Leutinant said "I received your staff request. If you need anything else just send a request form." I told him that I needed access to the DOJ Sex Abuse Reporting Hotline on the law library's computer. He face showed shock. He replied, "Okay, later!" After they left, and to this day they have given me no institutional way, aside from handwashing, to clean my underclothing like other inmates use washing machine.

94. Wednesday, same day, 10:30am. LT Brownfield finally authorized Mrs. Tate—a female officer, to let me access the law library's computerized DOJ's Sexual Abuse "Hotline." On this date, I'd reported that I'd been sexually abused—even raped, by more than 1 individuals on multiple occassions, by some, while I was housed at FCI Beaumont Medium. LT Brownfield and Hansen were made aware of my reporting, yet to this day no one has come to talk with me about my assertions or to offer any counseling. I even let the LT's know of Sowell's inappropriate remarks, yet they still allow him to work the SHU unpunished!

95. Tuesday, December 18, 2018 at 7pm, S. Sowell came to my door to retrieve razors. I was terrified!

96. Same day, at 8:15pm I just had to confront Sowell. As he walk and stopped at my door 236, I said that it wasn't right that he'd talked to me the way he did! Then I explained that it wasn't me that cursed him out and threatened him. I told him that while he was at the other end of the range from me, and about to exit, an inmate, other than I, in one of the cells on the range didn't like that he was verbally abusing me. I let him know that it was that inmate who'd said the things to him that he'd put in the bogus disciplinary report. I said further that I was in the Hole because my unit shower area had a hole in the ceiling and I didn't feel safe in the unit. I said that I was a devout Buddhist—celebant and all! And that I don't use words or phrases like that. Sowell responded nonchalauntly, "Man, it just got heated, that's all!" "That's all?" I asked, "You filed a complaint that is going to raise my custody points. They're going to send me to a higher security prison!" As he walked off, he said, "It's too late to unfile it! What's done is done!"

97. Wednesday, December 19, 2018 12:15pm, Mrs. Tate pulled me out of cell 233 for what would become a rigged disciplinary hearing. When I arrived at the room I saw DHO Supervisor, Mrs. Lacy on video conference. I'd been before her 5 years prior, and knew personally that she was biased and prejudiced toward LGBT free people, and incarcerated. Upon information and belief, on a Friday August 3, 2018 the DHO Secretary, Mrs. Allen at 12pm had told me that she'd filed a complaint against Mrs. Lacy. (We were in unit W4). Mrs. Allen had said that she had hugged a transgender officer in front of Lacy and Mrs. Lacy commented, "Girl, you just hug anybody—don't you?" Mrs. Lacy's husband, Mr. Lacy used to harass me at FCI Beaumont Medium, when I'd come through the meal line. He would purposely misgender me trying to make jokes in front of other people by using male pronouns/surenames. I had reported him. I knew her officiating my hearing was a conflict of interest, but how could I protest with all the staff threats and possible other retaliation? I endured! She found me guilty, gave me zero SHU time, took 27 good time days, told me to appeal, and said I was free to go back to yard!

Yet, here I sit; in a cold SHU cell alone on New Year's Eve, trying to be the lawyer that I know I'm not. I'm still in the SHU under the guise of "Investigation"—so that my custody points can be raised. Administration's aim in make sure that my grievances can't be appealed, filed, and so I can't help the 10 plus TG women receive important gender-affirming items and safe housing. Happy New Year! (Exhibit I)

98. Wednesday, same day, 8pm CO Thomer came to my cell door 233 and said, while pointing at his name on his shirt, "Make sure you spell my name right!" I had just come from a 15 minute trip to the law library to print off info for the _Doe v. Mass. Dept. of Corr._ case. But when I went to computer, they rushed me and there was no paper in printer. Anyway, Thomer had thought I'd reported him on the Sexual Abuse Hotline! Yes, I did report him when I was at FCI Beaumont Medium for misgendering me, calling me male pronouns, etc. And yes, he was present when Sowell harrassed me, and he was laughing at my expense! But I didn't report him. This is the environment that the FBOP houses it's Transgender Special Population in. Again, that behavior is a deterant to some inmates to file this type of complaint, but I endure!

99. Thursday, December 20, 2018 at 4:30pm my Unit Manager - Taylor came onto the 400 Range. He was escorted by a female CO D. Smith. As they walked past my new cell door 233, I tried to get him to stop. He looked at me and kept walking, to the end of range where my old cell 236 was located. They turned around and as they walked in front of my cell 233, I tried to get him to stop and help me as he is the head of my non-existent Unit Team! Taylor looked back at me, ignoring my plea, and they exited the range. (see camera). Taylor had told all the inmates in a town hall meeting in Unit WA that we are to go to the unit counselor first, then the case manager second, before finally seeking him out. I wanted to tell him that his subordinate, counselor A. Collins, hasn't come to my door to help me yet! She was supposed to bring tort claim forms, a printout of my last 6 months income so I could attach it to my Informa Paup. form. I needed her to transfer my last $35.00 to my empty commissary account so I can buy mailing stamps, for legal work. Collins hasn't returned my Gender-Affirming Commissary BP-10 Remedy that South Central Region was due to respond by Dec 19, 2018; and I need to get more grievance forms from her to file on staff, etc. I needed Taylor to get the SHU property officer to give me my legal work in my property. So, Taylor exited the range without helping me. Again, as this complaint shows — their aim is to silence me and my cause. Thus far I have no legal recourse. I am being denied access to court. And I'm not even sure this complaint will even make it out of this institution and to your desk!

100. Christmas 2018, at 4:57pm CO Thomer walked by my cell door and purposfully misgendered me. He said, "What's up brother?" FBOP has failed to make reasonable safe housing accomodations for me — a transgender female inmate, with a serious Gender-Dysphoria disability.

101. Your Honor—Judge, I can't make this Hell up! For me, it's real! I am asking you to please intervene and have me placed into general population —so that I may finish my legal work safely. A U.S. District Court Judge, Mark Walker, savaged Florida TG prisoner Reiyn Keohane's mistreatment by DOC officials in August 2018 by saying they'ed been "indifferent" to Keohane's suffering. Judge Walker went further to say that the case was "about whether the law, and this court by extension, recognizes Ms. Keohane's humanity as a transgender woman," Walker declared: "The answer is simple. It does, and I do." Seventh Circuit Chief Judge Diane Wood said, as to Wisconsin DOC prisoner Lisa Mitchell, "Punishment for Mitchell's crimes cannot extend to the deprivation of medical treatment she requires for her serious gender dysphoria ... DOC staff must approach Mitchell's request for treating gender dysphoria with the same urgency and care as it would any other serious medical condition." See: Mitchell v. Kallas, 895 F.3d 492 (7th Cir. 2018). Please HELP! I am not ready to die of rape, exstanguination, or strangulation.

102. New Year's morning 2019. I was suddenly awaken by shouting out on the 400 Range. It was 4:06am. I ran to the door, looked through the small window to my right. They were out of view, but I heard, "Get up against the wall." The strong voice was LT Lemons. "Move to the back of the cell! Cuff up!" Seconds later someone asked, "Is he breathing?" Lemon, "Cut it, Cut it!" Minutes later, "I can't get a pulse! Call an ambulance!" "I'll go get the machine." Plastic rustled, feet scuffled, huffing and puffing! Lemon, "I still can't get a pulse! I'm starting CPR." More huffing, puffing, and pumping. Then, "Hook it up!" An electronic voice said, "Start CPR." Someone cried, "Where's the ambulance?" Lemons, "They'll be here!" Electronic voice said, "Move away from body! Don't touch body! Start defibrulator! Begin CPR." A female, "Somethings wrong with the machine; it's not telling you to breath!" Lemon, "I still can't get a pulse!" Female, "I think he's gone! Do you want me to call it?" Lemon, "I'll keep going 'till they get here!" At 4:35am, the non-respondant inmate and the NOW concerned FBOP staff -moved down and out of the 400 range. Silence! An eerie silence engulfed the entire floor. We all stood in the tiny windows, out onto the range, processing, knowing that he had died! My mind moved at warp speed, "Did his cellmate rape and kill him? Did he overdose on medicine or k-2/spice? Did he kill him self?" I began pacing frantically. Then I sobbed, screamed!

103. December 29, 2018, morning. The female duty officer came by my cell 233. I told her that my Unit Team members, A. Collins and Taylor has failed to transfer my last $33 to my available commissary account so that I can purchase mailing stamps for pending and due legal work. She said she would tell Unit manager Taylor this and that I need 2 printouts of my Trust Fund accounts last six month's of deposits.

104. At 1:25p same day, I gave Unit XA's counselor Davis a staff request for Taylor. He said he would put it in Taylor's box. The request form listed the needed items in the previous paragraph.

105. January 2, 2019, Wednesday, 2:30pm unit manager Taylor came by my cell door 233. I gave him the Exhibit A-Remedy 1 grievance. Then I told him that I'd sent several request forms to him and A. Collins requesting FTCA forms, Trust Fund Statements, transfer of funds to my available commissary so that I could purchase stamps to write family and regional director and court. I let him know that this was the 50th day that I'd been in SHU, and that policy, and PREA says that a transgender inmate should not be held in SHU past 30 days, and that DHO S. Lacy had said that I was free to go. He said he'd talk with Hansen.

106. January 6, 2019 Sunday at 1pm, LT Fontenot came by my cell door 231. He said that Warden Lewis wants to transfer me but my status won't allow him to. I said that Hansen should let me out cause he can just put me in another unit. I went further to explain that I came over to this Low security prison yard to be around more TG inmates because there are few if any at the Medium security prisons because of the violence level. And that my points or custody points were at Medium level but for my safety and social TG transition I need to stay here.

107. At 2:20 same day, I gave CO D. Smith a staff request to deliver to A. Collins asking for the previously mentioned Due Process items. This was in 400 Range - cell 231.

108. January 8, 2019 Tuesday 12:55pm during an administrative staffs weekly walk-thru I had Associate Warden Haro stop at my door. I let him know my situation. He said he thinks I'm being put in for transfer. I explained that my unit Team had been denying me access to courts. I gave him a request form with all the things I need done and provided: transfer last $33 to commissary for stamps, FTCA Forms, and Trust Fund account print outs, etc. He said he'd email/scan to Taylor.

109. At 1:05pm same day Taylor appeared on range 400. He stopped at my door 231. I finally inferred that FBOP staff were intentionally blocking my access to courts and Due Process rights by not transferring funds for stamps or providing necessary legal forms and that my counselor wasn't visiting me like the other inmates counselors and unit teams. He said he'd talk with Collins again to get the things I need. I let him know that her stalling is going to cause me to be time barred on filing some of my grievances. I then offered, "Unless you all want to give me some indigent stamps?" He said, "No, we can't do that! Let me get her to transfer the funds! I'll get back with you."

110. Lastly, same day at 3:10pm LT Brownsfield came to my door 231 to give me my status. He held a comuter printout with all SHU inmate's pictures and information. He said, "This says that you are free to go to yard. And you are still low status. He hasn't gotten back with me. And yet, here, Your Honor, I sit in a Box of the FBOP's making for retaliation! HELP!

## V. EXHAUSTION OF LEGAL REMEDIES

111. Plaintiff satyagrahi used the prisoner grievance procedure available at FCI Beaumont Low. On December 20, 2018 plaintiff presented the facts relating to this complaint. On January 2, 2019 plaintiff gave appeal of unreturned grievance to Unit Manager Taylor for delivery to warden. Plaintiff has received no response. Satyagrahi's grievance and appeal are attached as Exhibit A-Remedy 1.

112. Plaintiff satyagrahi used the prisoner grievance procedure available at FCI Beaumont Low to try and solve the problem. On July 19, 2018 plaintiff presented the facts relating to this complaint. On July 30, 2018 plaintiff received a response that equaled a denial. On August 6, 2018 she appealed the denial of grievance to the warden. On August 22, 2018 she recieved a response that equaled a denial. On Sept 10, 2018 plaintiff satyagrahi appealed the denial of grievance to the Regional Director. On October 16, 2018 the Regional Director denied the grievance. On November 19, 2018 plaintiff satyagrahi appealed the denial of grievance to the Director of the Federal Bureau of Prisons —FBOP. She has recieved no response. Satyagrahi's grievance and appeals are attached as Exhibit B-Remedy 2.

113. Plaintiff satyagrahi used the grievance procedure available to prisoners at FCI Beaumont Low to solve the problem. On August 7, 2018 plaintiff presented the facts relating to this complaint. On August 28, 2018 plaintiff received a response that equaled a denial. On August 28, 2018 ms. satyagrahi appealed the denial of grievance to the warden. On September 17, 2018 plaintiff received a response that was a denial. On October 5, 2018 plaintiff appealed the denial of the grievance to the Regional Director. On January 2, 2019 plaintiff received a response that said "Staff at your institution are in the process of updating the commissary list." Until plaintiff's requested remedy is realized—she deems this as a denial. Plaintiff satyagrahi is currently preparing appeal of this denial of grievance. satyagrahi's grievance and appeals are attached as Exhibit C-Remedy 3.

114. Plaintiff satyagrahi used the prisoner grievance procedure available at FCI Beaumont Low prison to try and solve the problem. On November 7, 2018 plaintiff presented the facts relating to this complaint. On November 8, 2018 ms. satyagrahi received a response to the grievance that equalled to denial. On November 13, 2018 plaintiff appealed the denial of the grievance to the warden. On December 3, 2018 plaintiff received a response to the grievance that equalled to denial. On December 20, 2018 at 1:40am Plaintiff gave CO Williams her appeal to the denial of the grievance for placement in mail for delivery to the Regional Director. She received no response. Satyagrahi's grievance and appeal are attached as Exhibit-D-Remedy 4.

115. Plaintiff Satyagrahi used the prison grievance procedure available at FCI Beaumont Low Prison to try and solve the problem. On January 14, 2019 plaintiff presented the facts to this related complaint to the Regional Director via legal mail. Plaintiff has yet to recieve a response. Satyagrahi's grievance is attached as Exhibit-H Remedy 5.

116. Plaintiff satyagrahi used the prison grievance procedure available at FCI Beaumont Low Prison to try to solve the problem. On January 14, 2019 plaintiff presented the facts related to this complaint to the Regional Director via legal mail. Plaintiff has yet to recieve a response. Satyagrahi's grievance is attached as Exhibit -I Remedy 6.

## VI. LEGAL CLAIMS

117a. Plaintiff realleges and incorporate by reference paragraphs 1-116.

117b. Defendants M.K. Lewis, Cuttwright, Hansen, Taylor, A. Collins, and Dr. McGarvey's failure to provide safe housing conditions for plaintiff, while providing safe housing for "similarly situated" inmates violated plaintiff's rights and constitutes an Equal Protection Clause violation under the Fourteenth Amendment of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress and irreparable injury.

118. Defendants M.K. Lewis, Cuttwright, Hansen, Taylor, and Dr. McGarvey's false imprisonment of plaintiff was and is retaliatory and violates plaintiff's rights and constitutes an Equal Protection violation under the Fourteenth Amendment of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress and irreparable injury.

119. Defendants M.K. Lewis, Cuttwright, Hansen, Taylor, A. Collins, and Dr. McGarvey's failure to provide safe housing conditions for plaintiff violates plaintiff's rights and constitutes "deliberate indifference" and wanton infliction of pain — which is Cruel and Unusual Punishment under the Eighth Amendment of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress and irreparable injury.

120. Defendants M.K. Lewis, Cuttwright, Hansen, Taylor, and McGarvey's false imprisonment of plaintiff was and is retaliatory and violates plaintiff's rights. This constitutes "deliberate indifference" and wanton infliction of pain — which is Cruel and Unusual Punishment under the Eighth Amendment of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress and irreparable injury.

121. Defendants M.K. Lewis, Cuttwright, Hansen, Taylor, A. Collins, and Dr. McGarvey's false imprisonment of plaintiff is and was retaliatory and violates plaintiff's rights and her rights to "petition Government for redress of grievances". This constitutes an Access to Courts violation under the First Amendment of the United States Constitution. This has caused plaintiff to become irreparably injured.

122. Defendants M.K. Lewis, Cuttwright, Hansen, Taylor, A. Collins, and Dr. McGarvey's false imprisonment of plaintiff is and was retaliatory and violates plaintiff's rights and constitutes a Due Process Clause violation under both: the Fifth and Fourteenth Amendments of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress and irreparable injury.

123. Defendants M.K. Lewis, Taylor, and A. Collins failed to provide safe housing conditions for plaintiff by using male pronouns/sirnames to communicate with plaintiff - a transgender female inmate that's diagnosed with Gender Dysphoria.

This violates plaintiff's rights, and constitutes deliberate indifference and wanton infliction of pain - which is a Cruel and Unusual Punishment violation of the Eighth Amendment of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress, and irreparable and imminent injury.

124. Defendants M.K. Lewis, Cutbwright, M°Garvey, and Dortch's confiscation of and failure to re-issue plaintiff's Visual Search By Female Staff ONLY card violates plaintiff's rights. This constitutes a Due Process Clause violation under the Fifth and Fourteen Amendments of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress, and irreparable and imminent injury.

125. Defendants M.K. Lewis, Cutbwright, Dr.M°Garvey, and Dortch's confiscation of and failure to re-issue plaintiff's Visual Search By Female Staff ONLY card violates plaintiff's rights. This constitutes a Right to be Free From Unreasonable Searches and Siezures violation under the Fourth Amendment of the United States Constitution. this has caused plaintiff great pain, suffering, emotional distress, and irreparable and imminent injury.

126. Defendants M.K. Lewis, Cutbwright, Dr. M°Garvey, and Dortch's confiscation of plaintiff's Pat/Visual Search By Female Staff ONLY card, while similarly situated FBOP inmates are allowed  to keep their's violates plaintiff's rights and constitutes an Equal Protection Clause violation under the Fourteenth Amendment of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress, and irreparable and imminent injury.

127. Defendants M.K. Lewis, R.F. Caraway, S. Ledet, Commander Edwards, and Dr. M°Garvey's failure to provide plaintiff with adequate medical accomodations via access to more female-styled, gender-affirming clothing and commissary items violates plaintiff's rights. this constitutes "deliberat indifference" and wanton infliction of pain, which is a Cruel and Unusual Punishment violation of the Eight Amendment of the United States Constitution and has caused plaintiff great pain, suffering, emotional distress, and irreparable and imminent injury.

128. Defendants M.K. Lewis, R.F. Caraway, S. Ledet, Commander Edwards, and Dr. M°Garvey's failure to provide plaintiff with adequate medical accomodations via access to more female-styled, gender-affirming clothing and commissary items, while similarly situated FBOP inmates are allowed these  accomodations violates plaintiff's rights and constitutes an Equal Protection Clause violation under the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress, and irreparable and imminent injury.

129. Defendants M.K. Lewis and LT Dortch's removal of plaintiff from her barber shop job was retaliatory for plaintiff's redress of grievances. this violates plaintiff's rights and constitutes a Right of Access to Courts violation under the First Amendment of the United States Constitution. This has caused plaintiff great pain, suffering, emotional distress, and irreparable and imminent injury.

130. Defendants M.K. Lewis and LT Dortch's removal of plaintiff from her barbershop job violated plaintiff's rights and constitutes a Due Process Clause violation under the Fifth and Fourteenth Amendments of the United States Constitution. This has caused plaintiff great emotional pain and distress, and irreparable harm.

131. Defendants M.K. Lewis and LT Dortch's removal of plaintiff from her barber shop job, while allowing other inmates to remain working in barbershop is a violation of Plaintiff's rights. This constitutes Gender Discrimination,

which is an Equal Protection Clause violation under the Fourteenth Amendment of the United States Constitution. This has caused plaintiff great emotional distress and irreparable injury.

132. Defendant S. Sowell's sexually abusive remarks and threats toward plaintiff, a documented transgender woman with a Gender Dysphoria disability, violated plaintiff's rights and constitutes a Cruel and Unusual Punishment violation under the Eigth Amendment of the United States Constitution. This has caused plaintiff emmense suffering, pain, emotional distress, and irreparable and imminent injury.

133. Defendant LT Hansen's failure to follow fair procedures by representing plaintiff throughout entire disciplinary procedure hearing violated plaintiff's rights and constitutes a Due Process Clause violation under the Fifth and Fourteenth Amendments of the United States Constitution. This has caused my plaintiff to be irreparably harmed.

134. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of defendants unless this court grants the declaratory and injunctive relief which plaintiff seeks.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgement granting plaintiff:

135. A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States, and

136. A preliminary and permanent injunction ordering defendants M.K. Lewis, Cutwright, Hansen, Taylor, A. Collins, Dr. McGarvey, S. Ledet, Dortch, Commander Edwards, R.F. Caraway and S. Sowell to place a permanent management variable on plaintiff to be house ONLY at Low security prisons - for safety; to release plaintiff from FCI Beaumont SHU immediatly back into FCI Beaumont Low's general population; to immediately re-house plaintiff inside of the Unicor workers unit - XA; to place a permenant designation on plaintiff to cell in the closest cell to the officer's station; to place a permanent disignation allowing plaintiff to cell exclusively with transgender inmates, and to cell alone when transgender inmates aren't available; to have PREA staff and transgender inmates (plaintiff) agree upon set times per day when plaintiff can shower with zero cis-gendered inmates In shower stall area, with an officer standing guard in shower area corridor; to give plaintiff a traveling Pat/Visual Search card by Female Staff ONLY - one that is kept on plaintiffs person at all times while in transit from prison to prison, etc; to instruct all FBOP staff via internal memo (electronic) to use female pronouns and signames (she, her, Miss, etc.) when talking with, to others about, and/or when writing about plaintiff on documents and in FBOP computer systems - SENTRY, BEMR, etc, - NO Exception!; to post all of the aforementioned requests in to all FBOP data bases - SENTRY, BEMR, Posted Picture File, and onto plaintiff's bed book card; to provide plaintiff with immediate access to the female-styled, gender-affirming clothing (from Laundry Department: Khakis blouses and pants, t-shirts, socks, work boots, and winter coats; and from Commissary Department: Sweat shirts and pants, long and short sleeve t-shirts, jersey and cotton shorts, tall and

low cut socks, and Timberland-styled purchaseable work boots); to provide immediat access to all of the gender-affirming items on the FBOP's Standardized Transgender Commissary List (PS200.04: blush, bodywash, clawhairclips, cotton balls, deodorant, Ethnic hair shampoo, eye shadow and foundation (variety of colors), hair rollers, hair pick, small hair rubber bands, hairspray, lipgloss, lotion, underwear, qtips, cheap/mach3 razors, cheap/average priced tennis shoes and Timberland-styled purchasable workboots, tall and low cut socks, all sizes of bras A cup on up, a cheap/G-shock watches — these gender-affirming items should not be UNISEX, but female-styled ONLY); to re-instate plaintiff's job in barbershop on evening shift Mon-Friday, with Grade 3 backpay at $271.00 for each month missed from work; to allow plaintiff to return immediately to her day job at Unicor factory with Grade 3 back pay and all missed overtime; to have plaintiff's disciplinary sanctions stayed/shelved until appeal process and court case is settled; to give plaintiff full access to courts: legal forms, pens, typewriter, ink ribbons, stamps, last 6 months income statements, weekly lawyer calls, opening all plaintiff's legal mail in front of her; to transfer plaintiff to a female prison — immediately, if the aforerequested can't be realized — for her safety! And I want the defendants to cease: plaintiff's planned transfer; the lifting of plaintiff's Low security management variable; from housing plaintiff in SHU/solitary confinement; from blocking any of plaintiff's request herein; from retaliating on plaintiff or any potential witnesses to these incidents in the complaint — especially transgender inmate witnesses; from impeding plaintiff's access to courts as listed in injunction request; &restrain defendant S. Sowell from working at FCI Beaumont Low until this matter is settled, as this is a Federal Complex which has three other prisons a few city blocks apart and S. Sowell only works maybe two day per week at the Low prison, the rest is worked at the USPennitentary — hence his brash attitude. Sowell's removal would be for my safety!, and

137. Compensatory damages against each defendant, jointly and severally, and

138. Punitive damages against each defendant, and

139. A jury trial on all issues triable by jury, and

140. Plaintiff's cost in this suit, and

141. Any additional relief this court deems just, proper, and equitable.

Dated: Sunday, January 20, 2018
Respectfully submitted,

° ayana satyagrahi aka
Marcus Choice Williams
USMNo. 43636279
FCI Beaumont Low
PO Box 26020
Beaumont, Texas 77720

VERIFICATION: I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

ayana satyagrahi aka A.C.W.                    ° Executed at Beaumont, TX on January 20, 2019
ayana satyagrahi aka Marcus Choice Williams

ayana satyagrahi aka
Marcus Choice Williams
USMN#: 43636-279
FCI Beaumont Low
PO Box 26020
Beaumont, TX 77720

In The UNITED STATES DISTRICT COURT
For THE EASTERN DISTRICT OF TEXAS
  ( Beaumont Texas Division)

ayana satyagrah aka
Marcus Choice Williams
  Plaintiff,


  v.


M.K. Lewis, warden of FCI Beaumont Low;
Cuthwright, PREA Compliance Manager at FCI Beaumont Low;
Hansen, SIS LT of Beaumont Low;
Taylor, Unit Manager at FCI Beaumont Low,
A. Collins, Correctional Counselor at FCI Beaumont Low;
Dr. McCrarvey, Correctional Psychologist at FCI Beaumont Low;
S. Ledet, Trust Fund Supervisor of FCC Beaumont;
Dortch, Operations Leutinant of FCI Beaumont Low;
Commander Edwards, Health Services Supervisor at FCI
Beaumont Low;
S. Sowell, Corrections Officer at FCC Beaumont;
R.F. Caraway, Regional Director of Federal Bureau of
Prison's South Central Region, et al.,
  Defendants,

ORDER TO SHOW CAUSE FOR A
PRELIMINARY INJUNCTION &
A TEMPORARY RESTRAINING ORDER
Civil Action No. _____

UPON THE COMPLAINT, the supporting affidavits of plaintiff's, and the memorandum of law submitted here with, it is:

ORDERED that the defendants M.K. Lewis, Cuthwright, LT Hansen, Taylor, A. Collins, Dr. McCrarvey, S. Sowell, S. Ledet, LT Dortch, Commander Edwards, and R.F. Caraway show cause in room _____ of the United States Court-house, 300 Willow ST, Suite 104, Beaumont, Texas 77701 on the _____ day of _____, 2019, at _____ o'clock, why a preliminary injunction should not be issued pursuant to Rule 65 (a) of the Federal Rules of Civil Procedure enjoining the defendants, their successors in office, agents and employees, all other persons acting in concert and participation with them, to place a permanent management variable on plaintiff to be housed ONLY at Low security prisons, for plaintiff's safety; to immediately release plaintiff out of FCI Beaumont Low SHU and back into FCI Beaumont Low's general population; to immediately re-house plaintiff back inside of the Unicor workers Unit-XA; to place a permanent designation on plaintiff that allows plaintiff to cell in the closest cell to officers station; to place a permanent designation on plaintiff allowing plaintiff to cell exclusively with transgender inmates, and when transgender inmates aren't available plaintiff is allowed to cell alone; to have PREA Compliance Manager and plaintiff to "agree"

on set times per day when plaintiff can shower with zero cis-gender inmates in shower stall area, with an officer standing guard in shower area corridor; to immediately issue plaintiff a Pat/Visual Search By Female Staff ONLY card, one that plaintiff carries from prison to prison, and is on her person even in transit; to instruct "all" FBOP staff via electronic memorandum to use female pronouns and sir names (she, her, Miss, etc.) when talking with, when talking to others about, and/or when writing about plaintiff on documents and in FBOP computer systems: SENTRY, BEMR, etc. — NO EXCEPTIONS!; to post all of the afore-mentioned requests/designations into FBOP databases — SENTRY, BEMR, Posted Picture File, and onto plaintiff's bedbook card; to immediately provide plaintiff with access to female-styled, gender-affirming clothing (Laundry Dept.: Khakis blouse and pants, t-shirts, socks, work boots, and winter coats; from Commissary Dept.: Sweat shirts and pants, long and short sleeve t-shirts, jersey and cotton shorts, tall and low cut socks, and Timberland-styled purchasable workboots); to immediately provide plaintiff with to "all" of the gender-affirming items on the FBOP's Standardized Transgender Commissary List (P5200.04: blush, body wash, claw hairclips-large and small, cotton balls, deodorant, Ethnic hair shampoo, eye shadow and foundation (variety of colors), hair rollers, hair pick, small hair rubber bands, hair spray, lipgloss, lotion, underwear, Q-tips, cheap and an expensive Mach 3 type razors, cheap and average priced tennis shoes and Timberland-styled purchasable work boots, tall and low cut socks, all sizes of bras-A to Z cup size, a cheap and a G-shock watches, these female-styled items are not to be substituted with Unisex items); to re-instate plaintiff's job in barbershop with Grade 3 backpay at $37⁰⁰ for each month of missed work; to allow plaintiff to immediately return to her Unicor factory day job with Grade 3 backpay and all missed overtime; to allow plaintiff's full access to courts: legal forms, pens, typewriter, ink ribbons, stamps, last 6 months income statement, weekly lawyer call, open all plaintiff's legal mail in front of her; to immediately transfer plaintiff to a female prison for her safety if the aforelisted requests aren't immediately realized!

IT IS FURTHER ORDERED that effective immediately, and pending the hearing and determination of this order to show cause, the defendants M.K. Lewis, Cattwright, LT Hansen, Taylor, A. Collins, Dr. McGarvey, S. Ledet, LT Dortch, Commander Edwards, S. Sowell, R.F. Caraway and each of their officers, agents, employers, and all other persons acting in concert or participation with them, are hereby restrained from transferring plaintiff; from lifting plaintiff's Low security management variable; from housing plaintiff in SHU/solitary con-finement; from blocking any of plaintiff's requests herein; from retaliating on plaintiff or any potential witnesses to the incidents in the complaint, especially the protected class of transgender inmate wit-nesses; from impeding plaintiff's "access to courts" as listed in injunction; restrain defendant S. Sowe from working at FCI Beaumont Low until this matter is settled, as this is a Complex that holds three other prisons, and Sowell normally works at the USP (information I belief) as he only works 1 to 2 days per week in the Low prison's SHU. Sowell's removal is for my safety!

IT IS FURTHER ORDERED that the order to show cause, and all other papers attached to this application, be served on the afore said Plaintiff/Defendants by the ____ day of ____, 2019.

X _____

Judges Signature          United States District Judge

Dated: _____

In The UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
    (Beaumont Division)


ayana satyagrahi aka
Marcus Choice Williams,
      Plaintiff,                                    |
                                                    |   DECLARATION UNDER
                                                    |   PENALTY OF PERJURY
    v.                                              |   Civil Action No._____
                                                    |
M.K. Lewis, et al.,                                 |
      Defendant                                     |


ayana satyagrahi aka Marcus Choice Williams USPN: 43636279 (herein satyagrahi, Plaintiff, and/or plaintiff satyagrahi) hereby declares:

   I find it ironic that I, a former oppressor of others, would be petitioning the Court to help in relieving my current state of oppression. I come in peace, as the name satyagrahi means, "Soul Force" according to Gandhi. This is a Hindi word, though I am a Buddhist, which is generally appointed to those who wish not to crush their opponents, but to bridge the great divide by helping the opponent to conclude that we can, and we must co-exist in this world - harmoniously! For I am a member of America's most marginalized class— The Incarcerated Transgender Women of Color! Often, I ask myself, "#AmInotahumanandtranstoo?" My aim in this endeavor is to help the defendants to realize that transgender inmates are humans too! We are merely trudging along in "this world" of insurmountable obsticals trying to simply survive. I urge this Honorable Court to help us where you can. This is an official satyagrahist movement!

   The Prison Rape Elimination Act - herein PREA - says that a transgender inmate's concerns about her safety are to be strongly considered; transgender inmates are only housed in Special Housing Units - SHU - as a last resort, when all other remedies have been exausted in general population; and transgender inmates shouldn't be housed in SHU longer than 30 days!

   I've been in Federal Bureau of Prison (herein FBOP) custody since August 2010. The first 2 years were spent at FDC Seagoville. The next 5 years were at FCI Beaumont Medium. On Friday, May 24, 2018, I arrived here at FCI Beaumont Low prison. And on a Tuesday afternoon, December 4, 2018 I was illegally imprisoned in the SHU, in literal solitary confinement! I am not allowed to cell with cis-gendered inmates, so I am alone! My complaint will show that I am in SHU because staff have retaliated against me for my pro transgender political beliefs, and for seeking the same type of redress of grievances, etc. Since being in this box, a bogus disciplinary report was lodged against me for asking to be treated like a human! It is my belief that this bombardment against my person is part of a larger effort to have me transfered from Federal Beaumont Complex - entirely! I will suffer immediate and irreparable injury if Court doesn't help!

January 2018, FCI Beaumont Medium staff decided that instead of sending me to a female prison to be around more female gendered inmates, and to access female daily hygiene items for daily ritual living, that I'd be transferred to a Low security prison — eventhough I had Medium prison security custody points as I still do now! The medium custody point didn't matter because my transfer was needed to be able to give me the necessary medical care/housing as recommended by Transgender Medicine's authoritors WPATH. org. There are never more than 2 transgender inmates housed at FBOP's medium prisons; this leaves us vulnerably vulnerable in a sea of 1500 testosterone-charged men! I can attest, with certainty, that transgender women should "never" be housed at Medium or USP prisons — only Low security fed prisons. I should know, because on December 13, 2018, I reported, via electronic DOJ Sex Abuse Hotline, that I'd been sex-ually violated more than 15 times by more than 6 men at FCI Beaumont Medium, and once at FDC Seago-ville. This can't be a hotline because to-date no one from DOJ has come to talk with me or to offer counseling!

Friday, May 24, 2018, I arrived at FCI Beaumont Low prison with high expectations! I wanted to meet my new transgender sisters! I wanted to be apart of a community! I wanted to be around less hardened, nothing-to-lose prisoners! And I wanted to access all of these new commissary and laundry items I'd been promised. I soon met the other TG women; they were and are every-thing I finally needed to get my social transition going, I miss them now! ⁎ Then, I found that the Low prison, like the Medium, and the entire Complex, had few, if any, TG services. I was gratefull for my new friends, so I begann to work! I filed grievances; talked to staff, got disc-riminated against, got retaliated against, and finally, here I reside in a bland, cold, cement box — alone, persecuted!

The Complaint will show that I have an extensive, complicated medical/psych history! I am dia-gnosed with Gender Dysphoria, Bi-Polar, Borderline, and recently the defendant doctor alluded to PTSD. On record, I have cut the private parts down below; tried to tie it off with the hopes of it falling off; tried to strangle myself to death, and numerous planned and failed auto-castrative and suicidal ideative attempts; And several of these have been attempted while in SHU! So, as you can see from history, I am not the best candidate to be housed in here — Solitary!

FBOP policy P5200.04, Federal PREA laws, ADA, Rehabilitation Act, and the Constitution supports everything that I asked FBOP for prior to being falsely imprisoned in lock-up. I should never have been sent to SHU. If I would never have been sent here, this "causation" would never have occured: disciplinary report, humiliation, ideation, depression, not bathing, being fearful of bathing, in-progress-transfer, etc. Again, I am asking this court to intervene and grant my injunctive relief where you can.

Aside from having to lobby staff to remedy my needs, I was quite happy and content for the first time in 8 years with my new progressive existence and friends. We were some

14 transgender women strong, in a sea of almost 2000 Low Security Male inmates. This is a small number no doubt, but in a Federal men's prison – that is enough to give us community, social standing, quality of life! I miss my friends !!! My grievances were about to be filed in your court anyway! With friends, community, and the ability to express our femininity outwardly, daily, through accessing Constitutionally mandated medical clothing, etc. – a girl could want little more, aside from actual free world freedom! I am not asking the Court to actually make new law. I am merly asking you to have the FBOP to not just print and list items in their Program Statement P5300.04, but have them to truly impliment their own policy! I am suffering immediate irreparable injury as we speak! We are suffering indeed!

   Tuesday, January 14, 2019, 9:30am, defendant SIS Hansen came to cell door 231. He said that "if I didn't have the (bogus) disciplinary charge, that have been released back into general population. He then said that because S. Sowell (the complaining officer) and defendant herein, would not feel "safe" working around me in gen. pop; that he had recommended that I be transfered to a medium security prison! I told him that I can't live at Medium prisons, that's why I'd filed the sex abuse stuff on the computer last month! I told him I was appealing S. Sowell's lie and suggested that I be released to the Low, and allow defendant Sowell to work his normal post at one of the other 3 prisons on this Complex, as he only works the Low prison once a week. Hansen said he was shipping me anyway! It's out of his hands! Your Honor, this is what the warden and staff here have been trying to do all along – to have their problem-child removed, silenced! Judge, I am not safe at Medium or higher security prisons! There is zero social transgender community there! I did not say what the defendant S. Sowell said I said! It is against my character at this junction in my life! In my TRO I have asked that S. Sowell be restrained from working at FCI Beaumont Low, until this case has been decided. He has options; this is a Complex; I don't – have options!

   If I am transfered, I will suffer immediate irreparable injury, harm, damage, and/or loss! I would have to suffer all over again in lobbying staff at the new prison to accomodate my medical/housing needs requested in this Complaint! I will certainly not have the mandated social transition found in daily interacting with female gendered inmates, as had at FCI Beaumont Low! The latter means that I would be isolated and made more vulnerable for another 8 years, until my custody points can be lowered through time! I would certainly experience physical sexual abuse – daily, by nothing-to-lose inmates. I am asking you to please grant my injunction and TRO? If, I remain in this cell any longer, I am sure to be plagued with depression, anxiety, etc.

   New Years 2019, 4am, an inmate who had 6 months left to go home killed himself in a cell 4 doors down from where I was. Days prior, he beat constantly on his door asking staff to help him – they ignored his cry. Cell 229 is sealed off as I write, with redd tape concealing the door's seams! Judge, some "humans" can't stand being isolated! I did nothing wrong to be here in the first place! Please release me back on to the FCI Beaumont Low yard, immediatly! I have suffered a grave injustice! You will not regret doing so! As I have come to far in my work to lose the progress I've made. This injunction / TRO being granted, even partially, would make the quality of life for too-many-to-count human beings instantly more pliable !!!

Here, I would like to ask the court to please forgive me for not following "some" of the rules of the Court. As I am not in the most idealic housing that would support me filing and preparing such a telling Complaint. By great Coincidence I had a Jailhouse Lawyer's Handbook, my pending grievances; and some case law provided by the LGBT Non-Profit lawfirm - Lambda Legal in my puise when I was booked into the SHU. If not for these coincidences, this Complaint wouldn't have seen the light of day so soon! But even with the aformentioned resources, staff have constrained my access to courts as life in this box is slow going. Staff have only allowed me maybe 5 hours of Law Library time, as this is the only place were inmates are allowed access to pens; we can't have them in our cells. Because of the lack of pens, I am not able to re write/condense, as I would like, the Complaint down to the 30 page max mandated by your court - please excuse excess pages, I am doing the best with what I have. Also I, because of lack of college-rule paper, have recycled "some" of the pages of Complaint - please excuse scratched out wording on the back of some pages. You rules also state that I am required to notify defendants either in person or via summons of these documents, upcoming court dates, etc; I feel that if I am forced to do this, that I will be immediately irreparably harmed. Maybe they will retaliate further? I am even fearful of asking the very staff I am filing suit on to make legal copies so that I can mail you two copies of Complaint as required by court rules; please excuse the lack of 2nd copy of complaint; release me from SHU, and grant me a lawyer so that I can have my lawyer assist me in notifying defendants. Otherwise, I am sure to be irreparably injured/harmed. I am so fearful of further retaliation that I believe it would be a miracle for this Complaint to actually make it into the US mail box and at your clerks office! Staff are finally failing to give me FTCA and last six months income statement.

I am no longer my self of old-2007. For when a person enters America's esteemed "prison industrial complex as a member of it's most marginalized group of humans, one quickly realizes the gravity of their old oppressive ways - as I do! Please help me! Please grant my injunction, TRO, and attorney. And please release me from SHU, as I have been here almost 45 days now. The latter is a violation of PREA law and FBOP policy PS200.04, as they state, "A transgender inmate shall not be held in SHU longer than 30 days for administrative reasons". I recieved zero SHU time for disciplinary complaint. Help where you can! If you can't approve my requests, I will be irreparably harmed! If I can't go back to FCI Beaumont Low yard immediately, please send me to female federal prison for my safety!

I declare under penalty of perjury that the foregoing is true and correct. Executed at Beaumont, Texas on January 17, 2019.

X ayana satyagrahi/dec.
ayana satyagrahi aka
Marcus Choice Williams
USMN: 43636-279
FCI Beaumont Low
PO Box 26020
Beaumont, Texas 77720



This is a picture of "some" of the LGBT inmates I am fighting for. The clothes we are wearing here are certainly self altered to fit our female body.

From Left to Right: Samantha, Maria, Ms. Robbie, Sabrina; Me-Ayana, J-Lo, and Ms. Flaca. FCI Beaumont Low's Black & Pink Cadillac!

In The UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
( Beaumont Division )

Dyana Satyagrahi   aka
Marcus Choice Williams,
Plaintiff,

v.

M.K. Lewis, et al.,
Defendant

MEMORANDUM OF LAW
Civil Action No. _____

In support of the complaint and affidavits of the plaintiff submitted herein:

1    Although this guide may be helpful for youth, the focus is on adults. Separate statutory and constitutional standards may apply to youth in both adult and juvenile facilities. Additionally, the guide focuses on criminal confinement facilities rather than civil detention. Though it may be helpful for civil Immigration & Customs Enforcement (ICE) detainees, the rights of an ICE detainee differ in certain ways from those of a criminal prisoner.

2    See 42 U.S.C. 15609(7) (defining "prison" for purposes of PREA to include "any confinement facility of a Federal, State, or local government, whether administered by such government or by a private organization on behalf of such government"); 28 C.F.R. § 115.501(b) ("The Governor's certification shall apply to all facilities in the State under the operational control of the State's executive branch, including facilities operated by *private entities* on behalf of the State's executive branch." (emphasis added)); *West v. Adkins*, 487 U.S. 42, 56-57 (1988) (private doctor who contracts with state to provide medical care may be sued for violating the Constitution); *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (private prison management company and its employees may be sued for violating the Constitution); *Conner v. Donnelly*, 42 F.3d 220 (4th Cir. 1994) (private doctor who sees prisoners by referral from prison may be sued for violating Constitution even if doctor is not under contract with the state); *but see Minneci v. Pollard*, 132 S. Ct. 617 (2012) (where a federal prisoner has an adequate state tort damage remedy, the prisoner may not sue the employees of a privately-operated prison for damages for violating the Eighth Amendment).

3    See *Fields v. Smith*, 712 F. Supp. 2d 830, 867-69 (E.D. Wis. 2010) (facility violated Equal Protection Clause where it denied hormone therapy to prisoners with gender dysphoria while providing such treatment for other medical conditions); *see also Johnson v. Knable*, 862 F.2d 314, at *1 (4th Cir. 1988) (reversing summary judgment on gay prisoner's claim that he was denied prison work based on his sexual orientation); *Kelley v. Vaughn*, 760 F. Supp. 161, 163-64 (W.D. Mo. 1991) (denying motion to dismiss prisoner's complaint alleging removal from job because he was gay).

10   Alison Flowers, "Dee Farmer Won a Landmark Supreme Court Case on Inmate Rights. But that's Not the Half of It." The Village Voice, Jan. 29, 2014, available at http://www.villagevoice.com/2014-01-29/news/dee-farmer-v-brennan-prison-rape-elimination-act-transgender-lgbt-inmate-rights/full/.

11   See *Farmer v. Brennan*, 511 U.S. 825 (1994) (prison officials' deliberate indifference to the beating or rape of a transgender prisoner violates Eighth Amendment's prohibition against cruel and unusual punishment).

12   *Id.* at 836.

13   *Id.* at 837, 847.

14   Valerie Jenness et al., Violence in California Correctional Facilities: An Empirical Examination of Sexual Assault (Irvine: Center for Evidence-Based Corrections, University of California, 2007), 3.

15   See *Lojan v. Crumbsie*, 12 CV. 0320 LAP, 2013 WL 411356, at *4 (S.D.N.Y. Feb. 1, 2013] (mere knowledge that plaintiff was transgender was sufficient to put prison officials on notice that she was susceptible to physical attack).

16   See *Green v. Brown*, 361 F.3d 290, 293-95 (6th Cir. 2004) (defendant's knowledge of transgender prisoners' vulnerability raised issue of fact as to deliberate indifference in failing to take protective measures); *Green v. Hooks*, 6:13-cv-17, 2013 WL 4647493, at *3 (S.D. Ga. Aug 29, 2013) (allegations that defendants were aware that transgender plaintiff feared for her life and that "prison is dangerous for transgender inmates" stated plausible case of deliberate indifference).

17   28 C.F.R. § 115.41(b); 28 C.F.R. § 115.241(b); 28 C.F.R. § 115.341(a).

18   28 C.F.R. § 115.41(c)(7).

19   28 C.F.R. § 115.52(b).

20   Janet Mock, "Chelsea Manning & the Battle for Trans Inclusive Health Care Without Bias" (August 22, 2013), available at http://janetmock.com/2013/08/22/chelsea-manning-transgender-healthcare/.

21   *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("[Eighth Amendment] principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration.").

22   *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *See also Fennell v. Quintela*, 393 F. App'x 150, 157 (5th Cir. 2010); *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotation marks omitted); *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (internal quotation marks omitted).

23   *See Helling v. McKinney*, 509 U.S. 25, 33 (1993). *See also Soneeya v. Spencer*, 851 F. Supp. 2d 228, 248 (D. Mass. 2012) (prison officials deliberately indifferent where they failed to "remove[ ] the risk of serious future harm" stemming from GID); *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) ("[Plaintiff]'s need for protection against continued self-mutilation constitutes a serious medical need to which prison officials may not be deliberately indifferent.").

24   *See, e.g., Edwards v. Snyder*, 478 F.3d 831, 832 (7th Cir. 2007) (treatment cannot be "blatantly inappropriate");

*Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998) (medical treatment in prison cannot be such that "no minimally competent professional would have so responded under those circumstances"); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (medical care in prison cannot be "so cursory as to amount to no treatment at all").

25   *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("We assume for purposes of this appeal that transsexualism constitutes a serious medical need."); *Brown v. Zavaras*, 63 F.3d 967, 970 (10th Cir. 1995) (prison officials must provide treatment to address the medical needs of transsexual prisoner); *Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (recognizing transsexualism as a serious medical need that should not be treated differently than any other psychiatric disorder); *Phillips v. Michigan Dep't of Corrections*, 731 F. Supp. 792, 799 (W.D. Mich. 1990) (complete refusal by prison officials to provide a person with GID with any treatment at all would state an Eighth Amendment claim). Note also that various physical manifestations of GID, such as genital mutilation, are also considered serious medical needs within the meaning of the Eighth Amendment. *See, e.g., De'Lonta*, 330 F.3d at 634 ("[N]eed for protection against continued self-mutilation [because of GID condition] constitutes a serious medical need.").

26   *See, e.g., Meriwether*, 821 F.2d at 413 (transgender prisoner has right to some form of treatment, but not to her choice of a "particular type of treatment, such as estrogen therapy"); *Briones v. Grannis*, CV 09-08074-VAP(VBK), 2010 WL 3636139, at *6 (C.D. Cal. Sept. 14, 2010) (failure to provide transgender prisoner with the specific type of hormone treatments she requested did not constitute an Eighth Amendment violation).

27   *See, e.g., Harris v. Thigpen*, 941 F.2d 1495, 1509 (11th Cir. 1991) (treatments cannot be denied merely because they are expensive); *Barrett v. Coplan*, 292 F. Supp. 2d 281, 285 (D.N.H. 2003) (treatment must be "based on medical considerations"; *Kosilek v. Maloney*, 221 F. Supp. 2d 156, 182 (D. Mass. 2002) (treatments cannot be denied merely because they are controversial).

28   *See Fields v. Smith*, 653 F.3d 550, 557 (7th Cir. 2011) (rejecting prison security argument because "transgender inmates may be targets for violence even without hormones" and defendants' expert "testified that it would be 'an incredible stretch' to conclude that banning the use of

hormones could prevent sexual assaults"); *Kosilek v. Spencer*, 889 F. Supp. 2d 190, 240-41 (D. Mass. 2012).

29   *See Battista v. Clarke*, 645 F.3d 449, 454-55 (1st Cir. 2011); *Tates v. Blanas*, No. S-00-2539, 2003 WL 23864868, *10 (E.D. Cal. 2003) (officials must balance security risks of providing transgender prisoner with bra against her medical needs); *Kosilek*, 221 F. Supp. 2d at 191 ("It has been, and remains, permissible for [prison officials] to consider the security implications of the medical care prescribed for [transgender prisoners]").

30   *See Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) ("[M]edical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate indifference."); *Estate of Cole v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996) (Eighth Amendment violation where treatment represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment"); *United States v. DeCologero*, 821 F.2d 39, 43 (1st Cir. 1987) (Eighth Amendment guarantees medical care "at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards"); *Barrett*, 292 F. Supp. 2d at 286 (D.N.H. 2003) ("'Adequate medical care' requires treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations."). *See also* above, n.23.

31   *De'Lonta*, 708 F.3d at 522-23 (WPATH standards "are the generally accepted protocols for the treatment of GID"; *Fields*, 653 F.3d at 553-54 (characterizing the WPATH standards as the "accepted standards of care"); *Kosilek*, 221 F. Supp. 2d at 166 (same).

32   WPATH, *Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People*, Version 7 ("Standards of Care"), at 67 ("Access to these medically necessary treatments should not be denied on the basis of institutionalization or housing arrangements.").

33   Standards of Care, at 22-23 (recommended minimum credentials for mental health professionals who work with adults presenting with gender dysphoria); at 8-10 (treatment is individualized to include one or more of psychotherapy, change of gender expression or role, hormone therapy, and surgery, since individual's treatment needs vary).

34   *See, e.g., Fields*, 653 F.3d at 555 ("Although DOC can provide psychotherapy as well as antipsychotics and antidepressants, defendants failed to present evidence rebutting the testimony that these treatments do nothing to treat the underlying disorder."); *cf. Edwards*, 478 F.3d at 831 (a prisoner's "receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was so 'blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition."); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (prisons cannot simply choose an "easier course of [medical] treatment that they know is ineffective").

35   *See De'Lonta*, 330 F.3d at 634-35; *Wolfe v. Horn*, 130 F. Supp. 2d 648, 653 (E.D. Pa. 2001); *Phillips*, 731 F. Supp. at 800 ("Taking measures which actually reverse the effects of years of healing medical treatment . . . is measurably worse [than failing to provide such treatment in the first place].").

36   *See Fields*, 653 F.3d at 557-58 (Wisconsin's blanket ban on hormone therapy and sex reassignment surgery constituted facial violation of Eighth Amendment); *De'Lonta*, 330 F.3d at 635 (allegations of denial of treatment based on blanket policy rather than medical judgment sufficient to support claim for deliberate indifference); *Allard v. Gomez*, 9 F. App'x. 793, 795 (9th Cir. 2001) (deliberate indifference if transgender prisoner was denied hormone therapy as result of blanket rule); *Soneeya*,

851 F. Supp. 2d at 250 (blanket prohibition on female canteen items and clothing violates Eighth Amendment); *Houston v. Trella*, No. 04-CV-1393, 2006 WL 2772748, at *8 (D. N.J. Sept. 25, 2006) (policy of withholding hormone treatment violates Eighth Amendment); *Barrett*, 292 F. Supp. 2d at 286 ("A blanket policy that prohibits a prison's medical staff from making a medical determination of an individual inmate's medical needs and prescribing and providing adequate care to treat those needs violates the Eighth Amendment"); *Kosilek*, 221 F. Supp. 2d at 176 (blanket policy that prohibits prison's medical staff from making medical determination of an individual prisoner's medical needs violates Eighth Amendment). *See also Colwell v. Bannister*, 763 F.3d 1060, 1068-70 (9th Cir. 2014) (blanket policy of denying cataract surgery where prisoners had at least one "good eye" violated Eighth Amendment); *Brock v. Wright*, 315 F.3d 158, 166-67 (2d Cir. 2003) (policy forbidding treatment of keloid scars for purposes of alleviating moderate chronic pain could support deliberate indifference finding); *Batterson v. Bannister*, No. 3:07-CV-142-BES-VPC, 2008 WL 3871710, at *8 (D. Nev. Aug. 19, 2008) (blanket policy prohibiting treatment for chronic pain without individualized assessment of prisoners' medical needs states Eighth Amendment claim).

37   *See Brooks v. Berg*, 270 F. Supp. 2d 302, 313 (N.D.N.Y. 2003), *vacated in part on other grounds*, 289 F. Supp. 2d 286 (N.D.N.Y 2003) ("[T]here is no exception to [the Eighth Amendment] for serious medical needs that are first diagnosed in prison."); *Kosilek*, 221 F. Supp. 2d at 193 (while presumptive freeze frame policy is permissible, ultimate decisions must be made an individualized basis rather than blanket rule); *see also Lynch v. Lewis*, No. 7:14-CV-24 HL, 2014 WL 1813725, at *2-*3 (M.D. Ga. May 7, 2014) (denial of hormones pursuant to freeze frame policy may violate the Eighth Amendment).

38   Federal Bureau of Prison Program Statement 6031.04 ("Patient Care"), dated June 3, 2014, at 42 (providing that "inmates in the custody of the Bureau with a possible diagnosis of GID will receive a current individualized assessment and evaluation" and that "[t]reatment options will not be precluded solely due to level of services received, or lack of services, prior to incarceration.").

39   *See, e.g., Estelle*, 429 U.S. at 104-05 (prison officials may manifest deliberate indifference by "intentionally denying or delaying access to medical care"); *Kothmann v. Rosario*, 558 F. App'x 907, 911 (11th Cir. 2014) (possible Eighth Amendment violation where transgender prisoner alleged that prison health official knew hormone therapy was medically necessary but nonetheless refused to provide it); *De'lonta*, 708 F.3d 520, 525 (4th Cir. 2013) (failure to evaluate transgender prisoner for surgery could constitute deliberate indifference); *Fields*, 653 F.3d at 558-59 (statute that prevented medical personnel from evaluating prisoners with GID for hormone therapy or surgery violated Eighth Amendment); *Battista*, 645 F.3d at 455 (extreme "composite of delays, poor explanations, missteps, changes in position and rigidities" regarding prisoner's request for hormone therapy showed deliberate indifference); *Jett v. Penner*, 439 F.3d 1091, 1097-98 (9th Cir. 2006) (delay of over a year before seeing a hand specialist constituted deliberate indifference); *Wallin v. Norman*, 317 F.3d 558. 562 (6th Cir. 2003) (delay of one week in treating urinary tract infection and delay of one day in treating serious leg injury could constitute deliberate indifference).

40   *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (extended delay in starting Hepatitis C treatment because prisoner might be released within twelve months stated claim under Eighth Amendment).

41   *De'lonta*, 708 F.3d at 526 n. 4 (allegation that prisoner had not been evaluated by a GID specialist for surgery stated claim of deliberate indifference); *Kosilek*, 221 F. Supp. 2d at 161, 189 (prisoner who was only seen by social worker and psychiatrist who did not have experience diagnosing GID had never received an individualized medical evaluation, since she had not been evaluated by qualified medical staff); *see also,*

*e.g., Hayes v. Snyder*, 546 F.3d 516, 526 (7th Cir. 2008) (refusal to refer to a specialist where doctor did not know cause of reported extreme pain could support deliberate indifference finding); *LeMarbe v. Wisneski*, 266 F.3d 429, 440 (6th Cir. 2001) (failure to make timely referral to specialist or tell patient to seek one out was deliberate indifference); *Oxendine v. Kaplan*, 241 F.3d 1272, 1278-79 (10th Cir. 2001) (prison doctor who reattached accidentally severed finger could be found deliberately indifferent for failing to refer prisoner for specialist care at any point; denial of access to "medical personnel capable of evaluating the need for treatment" and performing surgery one is not qualified for can be deliberate indifference); *Hathaway v. Coughlin*, 37 F.3d 63, 68-69 (2d Cir. 1994) (jury could conclude that prison doctor was deliberately indifferent when he failed to refer prisoner for re-evaluation for surgery to a specialist despite requests for further treatment from the prisoner); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (prison's refusal to provide specialty consultations from an orthopedic specialist or a psychiatrist without a court order was deliberate indifference).

42   *See Konitzer v. Frank*, 711 F. Supp. 2d 874, 908-11 (E.D. Wis. 2010) (prison officials' denial of plaintiff's requests for makeup, women's undergarments, and facial hair remover might give rise to an Eighth Amendment violation); *Soneeya*, 851 F. Supp. 2d at 246 (prison officials' delay in providing female canteen items and clothing necessary for plaintiff's GID treatment constituted deliberate indifference). Other

45   "Voices from Solitary: Cruel and Unusual Punishment for Transgender Women," available at http://solitarywatch.com/2014/08/07/voices-from-solitary-cruel-and-unusual-punishment-for-transgender-women/

46   *See* 28 C.F.R. § 115.42(c) ("In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.").

47   28 C.F.R. § 115.42(d), (e).

48   28 C.F.R. § 115.42(g).

49   28 C.F.R. § 115.43(a).

50   28 C.F.R. § 115.43(c), (b).

51   *See Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007); *Meriwether*, 821 F.2d at 416; *see also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

52   *See Medina-Tejada v. Sacramento County*, No. Civ.S-04-138FDC/DAD, 2006 WL 463158, at *8 (E.D. Cal. Feb. 27, 2006) (transgender prisoners should not be subject to automatic segregation); *Tates*, 2003 WL 23864868, at *9-10 (same).

53  See Lee v. Downs, 641 F.2d 1117, 1119-20 (4th Cir. 1981) (noting that involuntary exposure of one's genitals may be "especially demeaning and humiliating" and holding that prisoners should not be forced to expose themselves unless "reasonably necessary" to do so).

54  See Bell v. Wolfish, 441 U.S. 520, 560 (1979) (prison strip searches can only be conducted where "significant and legitimate security interests" outweigh "the privacy interests of the inmates"); Mays v. Springborn, 575 F.3d 643, 649 (7th Cir. 2009) (strip searches cannot be conducted "in a harassing manner intended to humiliate and cause psychological pain").

55  See Farmer v. Perrill, 288 F.3d 1254, 1260 (10th Cir. 2002) (transgender prisoners have "the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others unless the procedure is reasonably related to a legitimate penological interest") [emphasis in original]; Meriwether, 821 F.2d at 418 (forcing transgender prisoner to regularly "strip before guards and other inmates" may violate the Eighth Amendment where "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

56  See Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir. 1992) (prisoner had valid Fourth Amendment privacy claim where he was strip-searched in front of female prison staff); Shaw v. District of Columbia, 944 F. Supp. 2d 43, 55-57 (D.D.C. 2013) (transgender woman in prison had constitutional right not to be strip-searched by male prison staff).

57  Cumberland County Maine, D-243A, Denver Sheriff Department, Department Order 4005.1, Transgender and Gender-Variant Inmates (June 6, 2012),

58  28 C.F.R. § 115.15(a).

59  28 C.F.R. § 115.15(a), (e).

60  28 C.F.R. § 115.15(f).

61  28 C.F.R. § 115.42(f).

62  See Powell v. Shriver, 175 F.3d 107, 113-14 (2d Cir. 1999) (disclosure of fact that prisoner was transgender violated her constitutional right to privacy); see also Sterling v. Borough of Minersville, 232 F.3d 190, 196 (3d Cir. 2000) (threats to disclose arrestee's sexual orientation violated his constitutional right to privacy).

63  28 C.F.R. § 115.42(f)

64  See Marvin v. Goord, 255 F.3d 40, 43 (2d Cir. 2001).

65  See Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001).

66  See Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials do not respond to a prisoner's initial grievance, administrative remedies are exhausted); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (same).

67  42 U.S.C. § 1997e(e); see also Zehner v. Trigg 133 F.3d 459, 461-62 (7th Cir. 1997).

68  See 18 U.S.C. § 2246(2).

69. Jackson v. District of Columbia, 254 F.3d 262 (D.C. Cir. 2001), the court can only protect prisoners with a preliminary injunction while the court waits for them to exhaust grievance procedure.

70. Jones v. Block, 549 U.S. 199 (2007), court stated that prisoners do not need to show in their complaint that they have exhausted all grievance

71. Lewis v. Casey, 518 U.S. 343 (1996), in order to get an injunction, a prisoner must show actual or "imminent injury."

72. Palmer v. Richards, 364 F.3d 60 (2d Cir. 2004), court says when held 77 days in aggravating conditions ... could be significant.

73. Gillis v. Litscher, 468 F.3d 495 (7th Cir. 2006) and Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003) are both good cases examining short placement in bad conditions.

74. Quine v. Beard and Norsworthy v. Beard (9th Cir. 2017?) are two cases where transgender inmates were allowed surgeries, gender-affirming clothing (uniforms, etc.) and commissary (more than plaintiff requested here), preliminary injunctions - landmark cases!

75. U.S. District Court Judge Mark Walker savaged the mistreatment of Florida DOC transgender prisoner Reiyn Keohane. In Aug. 2018, he said that Jones and Upchurch were "indifferent" to Keohane's suffering. Walker said the case was "about whether the law, and this court by extension, recognizes Ms. Keohane's humanity as a transgender woman," He declared: "The answer is simple. It does, and I do!

76. Mitchell v. Kallas, 895 F.3d 492 (7th Cir. 2018), Seventh Circuit Chief Judge Diane Wood said of transgender prisoner Lisa Mitchell's mistreatment by Wisconsin DOC, "Punishment for Mitchell's crimes cannot extend to the deprivation of the medical treatment she requires for her serious gender dysphoria ... staff must approach Mitchell's request for treating gender dysphoria with the same urgency and care as it would any other serious medical condition."

77. Doe v. Mass. Dept. of Corr., U.S.D.C. (D.Mass), Case No. 1:17-CV-12255-RGS; 2018 U.S. Dist. LEXIS 99925, "In this sense, compulsory assignment to a men's prison caused Doe to be treated differently from other female prisoners in the Massachusetts penal system ... the court is of the view that Doe may very well prevail on her Americans with Disabilities Act and Fourteenth Amendment claims," wrote U.S. District Court Judge Richard G. Stearns.

Plaintiff's Signature: _____
Date: January 20, 2019